**FRAASS SURGICAL MFG. CO., INC.**
v.
**The UNITED STATES.**
No. 343–73.

United States Court of Claims.
Nov. 20, 1974.

Jacob H. Fischman, Forest Hills, N. Y., attorney of record for plaintiff. Norman Jacobson, of counsel.

Gerald L. Schrader, Washington, D. C., with whom was Asst. Atty. Gen. Carla A. Hills, Washington, D. C., for defendant.

Before DAVIS, SKELTON, and KUNZIG, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KUNZIG, Judge.

In this case involving three defense supply contracts, plaintiff, Fraass Surgical Manufacturing Company, Inc., presents a three-count petition for relief:

*Count I* is a request for reformation of contract to relieve plaintiff of liability for destruction of government property lost in a fire on plaintiff's premises.

*Count II* seeks mitigation under the contracts of the amount of plaintiff's alleged liability to the government.

*Count III* asserts that the money which plaintiff ultimately paid to defendant was paid under mistake of fact or law and that plaintiff is, accordingly, entitled to repayment.

The case is before us on defendant's five-pronged motion for summary judgment. We sustain the motion in part, dismissing portions of plaintiff's *Count II* and all of *Count III*. The remainder of the motion is denied.

Plaintiff is a supplier to the United States armed services of tropical survival kits assembled in part from materials furnished by the government and in part from items purchased by the contractor from other sources. On January 9, 1967, plaintiff's premises were almost completely destroyed by fire, and a quantity of government-furnished property (GFP), delivered by defendant and awaiting incorporation into survival kits, was destroyed. Following the fire, defendant informed plaintiff that language included in the proposals for each of three supply contracts negotiated in 1966 obligated plaintiff to assume strict liability for any damage or loss of GFP regardless of whether the contractor was at fault.

By letter of September 8, 1967, the Contracting Officer set the final amount of the government demand for reimbursement for lost GFP at $126,220.38. Of this amount, $15,117.10 was attributed to loss of GFP delivered for use under Contract No. DSA–120–67–C–0959 (No. 0959); $110,760.25 to lost GFP for Contract No. DSA–120–67–C–1174 (No. 1174); and $343.03 to GFP for Contract No. DSA–120–67–C–1222 (No. 1222). In early October 1967, at the insistence of defendant, plaintiff paid, under protest, the proceeds of a $75,000 insurance policy covering the GFP which had been stored on plaintiff's premises. The remaining $51,220.38 was offset against progress payments on Contract No. 1174.

To recover the $126,220.38 held by defendant, plaintiff filed suit directly in this court September 21, 1973. (No appeal was ever taken from the Contracting Officer's September 8, 1967 letter to the Armed Services Board of Contract Appeals (ASBCA).)[1]

Plaintiff's basic contention in this suit (*Count I*) is that an Armed Services Procurement Regulation (ASPR) in effect when these contracts were negotiated in 1966 relieved plaintiff of liability for loss of GFP. Plaintiff argues that ASPR 13–702(g) (1964) applied to "negotiated fixed price" defense supply contracts of the type here involved and required to be inserted in the contract proposals a clause "g" which would have imposed liability on the contractor only for loss of GFP caused by the contractor's "willful misconduct or lack of good faith." Instead, defendant's Contracting Officer included in the contract proposals a clause "g" placing risk of loss of GFP on plaintiff *regardless* of the cause

1. Since the ASBCA has not been involved in this case, our Wunderlich Act standard of review is not relevant here.

of the loss. Plaintiff contends that this inclusion was both erroneous as a matter of law and contrary to the intentions of the parties. Claiming, too, that the warehouse fire was not caused by elements of contractor misconduct specified in the *correct* clause "g," plaintiff seeks from this court reformation of the three contracts involved and return of the $126,-220.38.

Plaintiff argues secondly (*Count II*) that, assuming plaintiff is properly to be held accountable for loss of GFP, the dollar amount recoverable by defendant should be less than the $126,220.38 claimed because the loss was increased by government delay in delivering the property to the contractor. This delay, plaintiff asserts, violated delivery schedules which had been added as modifications to each of the three contracts. As a direct result of this delay, the contractor had more GFP on hand at the time of the fire than it would have had if the deliveries of GFP had been made on schedule.

Plaintiff's *Count III* alleges that its payments to defendant were made under mistake of fact or law and that plaintiff is accordingly entitled to repayment of $126,220.38.[2]

In its dispositive motion, defendant does not address the merits of plaintiff's contentions, but instead moves for summary judgment on the following grounds:

(A) all of plaintiff's claims are barred by the statute of limitations,

(B) all of plaintiff's claims should be barred by laches,

(C) plaintiff's *Count II* claim for mitigation of contractor's liability is barred by an accord and satisfaction with respect to Contracts No. 0959 and No. 1174,

(D) plaintiff has failed to exhaust its administrative remedies under Con-

tract No. 1222 on its *Count II* claim, and

(E) plaintiff's *Count III*, alleging payment under mistake of fact or law, either (a) is duplicative of plaintiff's *Count I* claim for reformation or (b) fails to state a claim upon which relief can be granted.

For reasons detailed below, we remand this case to the trial division for resolution of a factual dispute concerning when the statute of limitations began to run and, if then necessary, for decision of the substantive issues raised in plaintiff's *Count I*. Defendant's laches argument fails as a matter of law. Plaintiff's *Count II* claim on Contracts No. 0959 and No. 1174 is dismissed as barred by an accord and satisfaction. We hold, however, that plaintiff's omission to pursue contractual remedies with respect to Contract No. 1222 is excused by failure of the Contracting Officer to issue a proper "final decision" apprising plaintiff of its appeal rights. The remaining portion of plaintiff's *Count II* (Contract No. 1222) is remanded to the trial division along with plaintiff's *Count I*. Plaintiff's *Count III* is redundant and is, accordingly, dismissed.

(A) Statute of Limitations

This suit was brought September 21, 1973. In its motion for summary judgment, defendant argues that plaintiff's action is barred by the statute of limitations, 28 U.S.C. § 2501, because all of the events fixing the alleged liability of the defendant and entitling plaintiff to institute an action occurred more than six years before the date plaintiff filed its petition. Defendant contends the statute of limitations began to run either on September 8, 1967, when plaintiff was notified by certified mail of the final amount of the government claim, or on September 15, 1967, when the first $12,382.02 was allegedly with-

2. Through a clerical error, plaintiff's *Count III* asks for refund of $122,220.38 paid under mistake of fact or law. It is clear from the rest of plaintiff's petition, as well as from the subsequent pleadings and briefs, that the correct amount is $126,220.38.

held from the first partial payment due plaintiff under Contract No. 1174.

Defendant asserts the statute of limitations began to run from September 8, 1967, when defendant made an "authoritative demand" for reimbursement by a letter of the Contracting Officer setting the final dollar amount of the government claim for lost GFP. We disagree.

Scott v. United States, 18 Ct.Cl. 1 (1882), and Wood v. United States, 25 Ct.Cl. 98 (1889), cited by defendant as support for the proposition that the statute of limitations begins to run at the time "authoritative demand" is made, are not applicable to the case we are now considering. Those cases dealt with a special statute enabling federal paymasters to sue in the Court of Claims for relief of their responsibility for loss of public money stolen from them in the line of duty. In such cases, the statute of limitations has been held not to run until authoritative demand for repayment of the lost funds has been made by the government. In sharp contrast to this special rule for the accrual of the cause of action in paymaster cases,

> \* \* \* where a claim is based upon a *contractual obligation* of the Government to pay money, the claim first accrues on the date *when the payment becomes due and is wrongfully withheld in breach of the contract.* (Emphasis added).

Oceanic Steamship Co. v. United States, 165 Ct.Cl. 217, 225 (1964). Accord, Empire Institute of Tailoring, Inc. v. United States, 161 F.Supp. 409, 410, 142 Ct.Cl. 165, 167 (1958). In this case, no money was withheld from the contractor until at least September 15, 1967, the date defendant claims plaintiff was notified that $12,382.02 was being withheld from the first partial payment then due the contractor on Contract No. 1174. Until that date, under the rule set forth in *Oceanic Steamship,* plaintiff had no basis upon which it could sue the United States. Therefore, a cause of action *may* have accrued September 15, 1967.

However, by sworn affidavit, plaintiff claims it never was informed that any partial payment was being withheld. Plaintiff notes further that the Contracting Officer's letter of October 10, 1967, acknowledging receipt of plaintiff's insurer's check for $75,000 in partial satisfaction of the total $126,220.38 government claim, gave $51,220.38 as the outstanding balance owed to defendant. No account had been taken of the $12,382.02 allegedly deducted on September 15, 1967.

Defendant argues that plaintiff's entire claim accrued when the first deduction was made. Since the deduction itself is clearly in issue, this is a question we need not now decide. We refer this dispute to the trial division for resolution of the parties' conflicting assertions of fact regarding when the first offsets were made against contract payments owed to plaintiff.

### (B) Laches

■ Asserting lack of diligence on the part of plaintiff in prosecuting its claim and resultant prejudice to defendant, defendant argues that all of plaintiff's claims should be barred by laches. The prejudice alleged by defendant arose from the fact that files for Contracts No. 0959 and No. 1222 were destroyed July 24, 1973, supposedly in accordance with the requirement of Defense Supply Agency Manual Subsection 820.10. By affidavit, the administrative official who authorized destruction of the records states that he had no notice of pending litigation or of any other reason to preserve the files.

We reject defendant's laches claim for two reasons. First, as defendant itself concedes, this court has never applied the defense of laches in a contract action. H & M Moving, Inc. v. United States, 499 F.2d 660, 672, 204 Ct.Cl. 696, 719 (1974). Secondly, even if it were customary for this court to apply the equitable doctrine of laches in a contract action, the present case is not an appro-

priate one for use of this principle. In Maxan Dress Corp. v. United States, 115 F.Supp. 439, 444, 126 Ct.Cl. 434, 442 (1953), we stated:

> Implicit in the concept [of laches] is the idea of prejudice to the opposing party by the surprising assertions of duties owed or rights violated at a time when the elements of proof are obscured by the passage of months or years, or subsequent to some prejudicial change of position by the party sued.

Here, there were no "surprising assertions" of duties and rights. The defendant's agents had notice of plaintiff's refusal to concede liability for loss of GFP from the outset. Even while negotiating for delivery to defendant of plaintiff's insurer's check for $75,000 in partial satisfaction of defendant's demand for reimbursement for lost GFP, plaintiff denied responsibility for the loss. Plaintiff's letters of September 12 and 14, 1967, stated clearly that delivery of its insurer's check to defendant was made on the understanding that plaintiff conceded no liability to defendant for any sums whatsoever. Since defendant was apprised of plaintiff's legal position from the outset, the doctrine of laches cannot apply. Defendant's laches argument, therefore, fails as a matter of law.

### (C) Accord and Satisfaction

■ As noted above, plaintiff contends (*Count II*) that if it is liable for loss of GFP, the extent of its liability should be reduced because of defendant's delay in delivering the materials it had agreed to provide. It is this alternative basis of relief which defendant asserts is barred by an accord and satisfaction.

The fire which gave rise to this litigation occurred January 9, 1967. February 9, 1967, the Contracting Officer gave plaintiff formal written notice that the government considered plaintiff to be responsible for loss of GFP in the January 9 fire. February 23, 1967, plaintiff's president, H. D. Offenhartz, replied to the Contracting Officer, asking that he take into account the fact that the amount of GFP lost in the fire had been greatly increased by government delay in delivery. By letter of March 13, 1967, the Contracting Officer rejected plaintiff's argument, reminding plaintiff that "[t]he GFP Clause provides exclusive remedy for the delays caused by the Government * * *." On August 3, 1967, well after the issue between the parties had been thus joined, plaintiff submitted a claim for increased labor and overhead costs caused by government delay in delivering GFP for Contract No. 0959 and No. 1174, as well as for Contract No. 0226 (not included in this case).[3] By letter of December 20, 1967, plaintiff (again by its president, H. D. Offenhartz) agreed to accept $14,532 in settlement of its delay claim. Plaintiff's letter did not reserve any other claims against defendant arising from delay in delivery of GFP. In fact, a notation on the second page of the "Amendment of Solicitation/Modification of Contract" awarding the $14,532 in supplementary compensation to plaintiff provided explicitly:

> It is further agreed that the adjustment reflected above constitutes the *entire equitable adjustment* due the Contractor under clause 60.1–3a during the pendency of contracts DSA–120–67–C–0226, DSA–120–67–C–0959 and DSA–120–67–C–1174.[4] (emphasis added)

---

3. No equitable adjustment was either requested or received on Contract No. 1222.

4. Clause 60.1–3(a), included in all three contracts involved here, provided as follows:
   "60.1–3(a) *Government-Furnished Property.* * * * In the event that Government-furnished property is not delivered to the contractor by [times designated in the contract], the Contracting Officer shall, upon timely written request made by the contractor, make a determination of the delay, if any, occasioned the contractor thereby, and shall equitably adjust the delivery or performance dates or the contract price, or both, and *any other contractual provision affected by any such delay.* * * *" (emphasis added)

Defendant contends plaintiff is now estopped from seeking mitigation of the government claim for lost GFP on Contracts No. 0959 and No. 1174 because the contractor failed to reserve its rights when it accepted the $14,532 equitable adjustment. Plaintiff argues in response that despite the plain language of the modification agreement, the delay-based modification was not intended by either party to constitute the entire adjustment or to preclude plaintiff's right to assert government delay as a defense to the $126,220.38 claim for loss of GFP. We hold for the government.

■ As defendant correctly points out, the rule in cases where a contractor receives an equitable adjustment is that a contractor who accepts *without reservation or protest* the benefits of a supplemental agreement increasing his compensation may not later claim further compensation for alleged breach of contract. Brock & Blevins Co. v. United States, 343 F.2d 951, 170 Ct.Cl. 52 (1965). This court has also held that a supplemental agreement entered into between a contractor and the government operates as a bar to all claims not specifically reserved. Langoma Industries, Inc. v. United States, 135 F.Supp. 282, 285, 133 Ct.Cl. 248, 253 (1955).

In Cannon Construction Company v. United States, 319 F.2d 173, 176, 162 Ct. Cl. 94, 100 (1963), we said, "[t]here is no ambiguity in language which states that a certain sum shall constitute full compensation for delays." Similarly, there is no ambiguity in language which states that a payment to the contractor "constitutes the *entire equitable adjustment* due the contractor." In the *Cannon Construction Company* case, this court noted further that *conduct* of the parties is relevant in determining their intentions in a settlement situation. *Id.* Here, as the result of plaintiff's February 23 letter, both parties knew that plaintiff believed its liability for loss of GFP should be reduced because of government delay. Nevertheless, plaintiff kept silent when it accepted the $14,532

equitable adjustment. Accord and satisfaction was reached without reservation and yet plaintiff now attempts to reopen the entire issue of government delay. This it may not do. Accordingly, plaintiff's *Count II* for mitigation of defendant's demand for reimbursement is dismissed as to Contracts No. 0959 and No. 1174.

### (D) Administrative Remedies

■ Defendant's next contention is that plaintiff's claim for mitigation of its liability for loss of government property furnished under Contract No. 1222 should be barred by plaintiff's alleged failure to exhaust its administrative remedies on that contract.

Plaintiff argues, on the other hand, that plaintiff had no obligation to pursue an administrative appeal because it was not informed by the Contracting Officer of its appeal rights. Although the Contracting Officer's letter setting defendant's demand for lost GFP at $126,-220.38 purported to be the "final statement of the loss of Government Furnished Material sustained by the Government and for which you must reimburse the Government under the terms of the contract," the letter made no mention of procedures for appeals of the Contracting Officer's decision. We agree with plaintiff.

This court has been confronted before with a situation similar to the one we have in the instant case. In Zidell Explorations, Inc. v. United States, 427 F. 2d 735, 738, 192 Ct.Cl. 331, 335–336 (1970), we noted that an Armed Services Procurement Regulation (32 CFR § 1.-314(a) (1965)) expressly required the Contracting Officer to detail a contractor's appeal rights from an adverse decision. Accordingly, in that case we directed the Contracting Officer to render the proper "final decision" outlining those rights and dismissed plaintiff's petition without prejudice in order to allow the contractor to pursue its appeal before the ASBCA. This same ASPR, re-

codified as 32 CFR § 1.314(d) (1966), is applicable to the case at bar.

Therefore, under the *Zidell* rule, we could refer plaintiff to the ASBCA for determination of whether plaintiff is entitled to any mitigation it claims in *Count II* of the $343.03 demanded by defendant as compensation for loss of GFP supplied for Contract No. 1222. However, in this particular instance, the little that still remains of plaintiff's *Count II* may become moot if plaintiff ultimately prevails on its *Count I* claim that the wrong provision allocating the risk of loss of GFP was included in its contracts with defendant. Moreover, the factual setting of this case is now seven years old and the amount in dispute totals only $343.03. Accordingly, we remand the remnant of plaintiff's *Count II* to the trial division, along with plaintiff's *Count I* for appropriate action consistent with this opinion.

### (E) *Count III* is Redundant

■ Defendant's motion for summary judgment correctly points out that if plaintiff is alleging unilateral mistake in his *Count III*, we cannot grant relief. Although unilateral mistake may provide grounds for rescinding an executory contract, each of the contracts involved in this case has been fully performed. In fact, plaintiff makes no request for rescission. Only *mutual* mistake can provide a basis for reformation, Dale Ingram, Inc. v. United States, 475 F.2d 1177, 201 Ct.Cl. 56 (1973); and it is mutual mistake which plaintiff alleges in its *Count I*. Therefore, *Count III* is redundant and is dismissed.

Accordingly, defendant's motion for summary judgment on *Count I* and on the Contract No. 1222 element of *Count II* is denied; defendant's motion for summary judgment on the Contracts No. 0959 and No. 1174 aspects of *Count II* and on *Count III* is granted; and these portions of the petition are hereby dismissed. The case is remanded to the trial division for proceedings consistent with this opinion.