**FRAASS SURGICAL MFG. CO., INC.**

v.

**The UNITED STATES.**

**No. 343-73.**

United States Court of Claims.

Feb. 22, 1978.

Jacob H. Fischman, Forest Hills, N.Y., attorney of record, for plaintiff. Norman Jacobson, Bayside, N. Y., of counsel.

Gerald L. Schrader, Washington, D. C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant.

Before DAVIS, Judge, Presiding, KUNZIG and BENNETT, Judges.

## OPINION

PER CURIAM:

This case comes before the court on defendant's motion, filed November 10, 1977, under Rule 141(b), moving that the court adopt, as the basis for its judgment in this case, the recommended decision of Trial Judge David Schwartz, filed September 30, 1977, pursuant to Rule 134(h), plaintiff having failed to file a notice of intention to except or exceptions thereto and the time for so filing pursuant to the Rules of the court having expired. Upon consideration thereof, without oral argument, since the court agrees with the trial judge's recom-

mended decision, as hereinafter set forth,* it hereby grants defendant's motion and adopts the said decision as the basis for its judgment in this case. Therefore, it is concluded as a matter of law that plaintiff is not entitled to recover and the petition is dismissed.

## OPINION OF TRIAL JUDGE

SCHWARTZ, Trial Judge: This is an action for reformation of a contract in which plaintiff, a manufacturer of medical and surgical equipment, agreed to produce airmen's survival kits for the Air Force. Government furnished material (GFM) valued at $126,220 was present on the plaintiff's premises when the plant was destroyed by fire, without fault of the plaintiff. A clause in the contract imposed on the contractor strict liability for losses of GFM by fire. With a reservation of rights, plaintiff paid the Government $75,000 received as insurance proceeds, and the Government withheld the remaining $51,-220 from payments due under the contract. Plaintiff sues for refund of the $126,220, praying that the court reform the contract to replace the strict liability clause with another clause under which the contractor would be liable for the fire loss only in case of fault or wrongdoing.

The case has previously been considered by the court on the Government's motion for summary judgment. *Fraass Surgical Mfg. Co. v. United States,* 505 F.2d 707, 205 Ct.Cl. 585 (1974). The court dismissed portions of the petition and remanded the case for trial of a disputed question of fact determinative of the time of accrual of the cause of action and thus of the defense of limitations; and if the action were not barred by limitations, for trial of the claim of mutual mistake said to warrant reformation. Plaintiff has since amended its petition to allege that the challenged clause is unconscionable and therefore unenforceable.

* Whereas, the court adopts the trial judge's separate findings of fact, which are set forth in his report filed September 30, 1977, they are not

## I The Statute of Limitations

Plaintiff instituted suit on September 21, 1973; the suit is therefore barred under the 6-year statute if the cause of action accrued before September 21, 1967. 28 U.S.C. § 2501 (1970). The standard for determination of the date of accrual was determined by the court in the earlier opinion. "The claim first accrues on a claim for nonpayment of money," the court held, "on the date when payment becomes due and is wrongfully withheld in breach of the contract." *Fraass Surgical Mfg. Co. v. United States, supra,* 505 F.2d at 710, 205 Ct.Cl. at 591, quoting from *Oceanic S.S. Co. v. United States,* 165 Ct.Cl. 217, 225 (1964).

The fire which destroyed the property in question occurred on January 9, 1967. Following meetings with Government officers during January and February of that year, plaintiff resumed its performance of the contract in June. On August 24, the Government received plaintiff's invoice number 5854, apparently the first invoice since the fire. The Government claims that on September 15 it mailed an Advice of Payment form to plaintiff, notifying it that payment of $12,382.02, due on that invoice, was being withheld. The Government argues that receipt of this notice, which it is implied occurred before September 21, 1967, was the last event necessary to permit the plaintiff to bring suit as for a wrongful withholding. Accordingly, the court is asked to hold that the period of limitations began to run before September 21, 1967 and had expired when the suit was brought on September 21, 1973. The contention fails, for lack of notice to plaintiff of a firm withholding. The withholding pursuant to the Advice of Payment was tentative only. The Advice stated that the deduction was being made pursuant to a letter from the contracting officer of July 10, 1967, "authorizing tentative withholding." The evidence is that money withheld pursuant to such authority is placed in an escrow account pending a final determination of the amount to be withheld.

printed herein since such facts as are necessary to the decision are contained in his opinion.

Receipt of the Advice, therefore, was not a notice of an accomplished offset as a withholding from contract payments which were due the plaintiff, such as would require it to bring suit. Plaintiff was entitled to regard the action taken as non-final— merely a temporary postponement of payment. A final statement by the Government of the amount of its loss was dated September 8 and was agreed to by plaintiff on September 21. On October 10, 1967, the plaintiff with a reservation of rights turned over to the Government its insurance company's check for $75,000, reducing the balance due the Government to $51,220.38. On October 19, 1967, the remaining amount of the Government's claim was set off against payments due to the plaintiff on invoices for goods delivered, and payment was made to plaintiff of the balance due on the invoices. No payment by plaintiff or offset against sums due to plaintiff is therefore shown to have taken place earlier than October 10, 1967. Thus limitations had not expired when suit was brought on September 21, 1973.

## II Reformation

Reformation is sought to rectify the alleged mistaken inclusion in the contract of clause 60.1–3a(g), allotting to the contractor the risk of loss by fire of Government furnished material.[1] Plaintiff urges that the parties intended to include a different clause, under which plaintiff would be liable only for loss by reason of fault or wrongdoing by its officers. Were the contract so reformed, plaintiff would prevail, for the fire took place wholly without its fault.

■■ This court will normally grant reformation when there has been a mutual mistake of fact which causes the terms of a written contract to depart from the actual intention of the parties. *Fraass Surgical Mfg. Co. v. United States, supra,* 505 F.2d

at 713, 205 Ct.Cl. at 596; *Space Corp. v. United States,* 470 F.2d 536, 540, 200 Ct.Cl. 1, 8–9 (1972); *Bromion Inc. v. United States,* 411 F.2d 1020, 1022, 188 Ct.Cl. 31, 35 (1969). The plaintiff in such a case must show, of course, that the Government would have agreed to the contract if worded in accordance with the plaintiff's intention. *Ling-Temco-Vought, Inc. v. United States,* 475 F.2d 630, 639, 201 Ct.Cl. 135, 150–51 (1973); *McNamara Constr. Ltd. v. United States,* 509 F.2d 1166, 1170, 206 Ct.Cl. 1, 9–10 (1975). A claim may also be stated by allegations of the occurrence of a mistake of which the Government knew or should have known and that the Government should be required to share in the loss as a matter of equity. *Burnett Electronics Lab., Inc. v. United States,* 479 F.2d 1329, 1333, 202 Ct.Cl. 463, 472 (1973) (collecting the cases); *Ruggiero v. United States,* 420 F.2d 709, 715–16, 190 Ct.Cl. 327, 339–40 (1970).

■ Here a different kind of mistake by each of the parties is alleged. The Government, presumed to have intended to include in the contract the clause which the regulations bound it to use (*Chris Berg, Inc. v. United States,* 426 F.2d 314, 192 Ct.Cl. 176 (1970)), is said to have chosen wrongly between the two clauses—strict-liability and liability-for-fault-only—specified in the Armed Services Procurement Regulation for two different types of contracts. Plaintiff's mistake, of a very different sort, is alleged to have occurred when plaintiff's president, relying on his recollection of past contracts with the Government, did not read the contract before he signed it, and thus did not notice that the wrong risk-of-loss clause had been included. Failure to read a contract before signing it does not necessarily foreclose reformation, since the gravamen of the reformation inquiry is whether the document reflects the agreement actually reached by the parties. *Chi-*

---

1. The clause provides:
 "Unless otherwise provided in this contract, the Contractor assumes the risk of, and shall be responsible for, any loss of or damage to Government property provided under this contract upon its delivery to him or upon passage of title thereto to the Government as provided in paragraph (c) hereof, except for reasonable wear and tear and except to the extent that such property is consumed in the performance of this contract."

cago & N. W. Ry. Co. v. United States, 68 Ct.Cl. 524, 538 (1929). On the other hand, a contractor who does not read the contract furnished him by the Government must still show a mistake by the Government before he can obtain reformation, since otherwise the mistake is not mutual. See, for example, National Electronic Lab. Inc. v. United States, 180 F.Supp. 337, 148 Ct.Cl. 308 (1960); Schoeffel v. United States, 193 Ct.Cl. 923 (1971); Dale Ingram, Inc. v. United States, 475 F.2d 1177, 201 Ct.Cl. 56 (1973).

Both clauses involved in the claim for reformation—the clause present in the contract and the clause plaintiff says should have been there—have their source in the version of ASPR § 13–702 in force at the time the contract was made. 32 C.F.R. § 13–702 (1966).

Subdivision (a) of ASPR § 13–702 directed the inclusion in fixed-price contracts of the clause actually in the instant contract, 60.1–3a(g), with an exception stated in subdivision (b). Subdivision (b) provided that the less strict clause—making the contractor liable only for fault—should be included in "fixed price contracts under which the contractor is required to submit [the] certified cost or pricing data" provided for in ASPR § 3–807.3.[2] ASPR § 13–702, 32 C.F.R. § 13–702 (1966). In turn ASPR § 3–807.3, essentially a restatement of the Truth-in-Negotiations Act, 10 U.S.C. § 2306(f) (1970), provided that cost and pricing data should not be required where a negotiated contract is based on adequate price competition. 32 C.F.R. § 3–807.3 (1966).

 The contract with the plaintiff was a fixed-price contract, presumptively subject to the direction of subdivision (a) of

ASPR § 13–702 for the use of the clause actually used. Plaintiff's case is that the exception in subdivision (b) was nevertheless applicable because the contract was negotiated on inadequate price competition. Cost and pricing data, plaintiff contends, were therefore required to be furnished and were furnished by the plaintiff in the course of a pre-award survey. According to the Government, its officers intended to use the strict clause and were justified in doing so on the basis of a discretionary and correct judgment that there was adequate price competition such as exempted the contractor from the furnishing of cost and pricing data and thus from the application of subdivision (b) of ASPR § 13–702. Moreover, the Government denies that a pre-award survey was ordered or conducted and denies that plaintiff submitted certified cost and pricing data.

All these issues are determined against the plaintiff. The conclusion that the Government used the right clause and made no mistake makes it unnecessary to evaluate the cause of action, to pass on plaintiff's claim of its own mistake, or to discuss such questions as the effect of the Government's non-compliance with any of the regulations involved.

On the first issue—that of adequate price competition—it appears that the item involved had been the subject of two prior procurements. The bidders list for the item showed 15 firms. On the distribution of the Request For Proposals to these firms, six responded with bids. The range of bids per unit was $11.97 (the plaintiff's bid), $12.20, $19.25, $23.89, $25 and $39.50. Two of the bidders, plaintiff and the firm which bid $23.89, were the former suppliers. On these

**2.** The parties are in dispute over whether Revision 18 of ASPR § 13–702, dated August 1, 1966, governs the contract. The Revision was to be effective 90 days after its issuance but its use before then was optional. The Request For Proposals in this case was issued on August 12, 1966, and the contract was let on September 20, 1966. The revision was not actually received in the procuring agency in time for it to be used in the preparation of the instant Request For Proposals, and its effective date

came after the contract was awarded to plaintiff. In any event the revised regulation had the same effect for the present case as did the existing version. The revision merely incorporated the reference to "adequate price competition," formerly found in ASPR § 3–807.3, directly into the description in ASPR § 13–702 of the contracts in which the substitute risk of loss clause should be used. 32 C.F.R. § 13–702(b) (Jan. 1, 1967).

facts, the assistant contracting officer and contracting officer determined that there was price competition sufficiently adequate to treat the procurement as exempt from the need to furnish certified cost and pricing data.

"Adequate price competition," is in ASPR § 3–807 defined as present if responsible bidders submit two or more responsive bids which can satisfy the Government's needs. The decision is expressly described as a matter of judgment for the contracting officer.[3] The contracting officer's decision on this point must be regarded as within his discretion, not to be overturned unless it is shown to be arbitrary, capricious, or an abuse of discretion. *Sperry Flight Systems, Inc. v. United States*, 548 F.2d 915, 921, 212 Ct.Cl. 329, 339–348 (1977). Plaintiff does not seriously challenge the decision of the contracting officer. No evidence is shown of a lack of price competition; the range of bid prices is of course not such evidence. On the other hand, the number and the range of bids and the presence of bids by two former suppliers are more than ample support for the discretionary conclusion of the officers in charge that there was adequate price competition, thus no occasion to demand certified cost or pricing data and thus no reason to use the less strict risk-of-loss clause.

Plaintiff's additional, supporting claims are likewise rejected, on the facts. Plaintiff's president testified at trial that a pre-award survey had been conducted and in a pretrial deposition that he could not remember whether there had been a pre-award survey. His testimony that he gave a rough and sketchy cost data sheet to two Government officers in the course of a pre-award survey is outweighed by the direct testimony of the contracting officer and his assistant that they did not request such data and that no pre-award survey was conducted in connection with this contract. The data allegedly furnished by plaintiff was obviously not the detailed and certified cost or pricing data contemplated by the regulation. Too, the regulation provides that the certified data shall be solicited by the contracting officer. ASPR § 3–807.3. It is found as a fact that no pre-award survey was conducted, and that certified cost or pricing data was not solicited and not furnished.

All of the arguments for the applicability of subdivision (b) of ASPR § 13–702 fail, and it therefore appears that the clause in the contract on the subject of liability for GFM was the correct clause. There was no mistake by the Government and thus no mutual mistake and no case for reformation.

3. ASPR § 3–807.1 in part provides:

"(1) *Adequate Price Competition*.

"a. Price competition exists if offers are solicited and (i) at least two responsible offerors (ii) who can satisfy the purchaser's (e. g., the Government's) requirements (iii) independently contend for a contract to be awarded to the responsive and responsible offeror submitting the lowest evaluated price (iv) by submitting priced offers responsive to the expressed requirements of the solicitation. Whether there is price competition for a given procurement is a matter of judgment to be based on evaluation of whether each of the foregoing conditions (i) through (iv) is satisfied. Generally, in making this judgment, the smaller the number of offerors, the greater the need for close evaluation.

"b. If conditions (i) through (iv) in *a* above are met, price competition may be presumed to be 'adequate' unless the purchaser (e. g., the contracting officer) finds that:

"(i) the solicitation was made under conditions that unreasonably deny to one or more known and qualified offerors an opportunity to compete;

"(ii) the low competitor has such a determinative advantage over the other competitors that he is practically immune to the stimulus of competition in proposing a price (e. g., a determinative advantage because substantial costs, such as startup or other non-recurring expenses, have already been absorbed in connection with previous sales, thus placing the competitor in a preferential position); or

"(iii) the lowest final price is not reasonable and supports such finding by an enumeration of the facts upon which it is based; provided, that such finding is approved at a level above the contracting officer."

Compare ASPR §§ 21–126 Item 18, Extent of Competition in Negotiation, setting out substantially the same definition for purposes of providing procurement statistics.

### III Unconscionability

Plaintiff's final contention is that the strict risk of loss clause is unenforceable because it is unconscionable. According to an early definition, an unconscionable contract clause is one "which no man in his senses, not under a delusion, would make, on the one hand, and which no fair and honest man would accept on the other." *Hume v. United States*, 21 Ct.Cl. 328, 330 (1886), *aff'd* 132 U.S. 406, 10 S.Ct. 134, 33 L.Ed. 393 (1889). The grant of discretion to deny enforcement to an unconscionable clause in the modern Uniform Commercial Code's Section 2–302 is not intended to permit courts to redistribute risks allocated by differences in bargaining power, but rather to prevent oppression and unfair surprise. U.C.C. § 2–302, Official Comment 1.

There was here no surprise. Clause 3a(g) is there to be read, in print of the same size as the rest of the contract. Its language is quite clear, as contract clauses go—much clearer, for instance, than that of the less-than-strict liability clause plaintiff argues for. The testimony of plaintiff's president that he did not read the contract in 1966, because contracts that he had signed in 1963 and 1960 had contained the other clause, is irrelevant and unacceptable. He is an experienced businessman and should know better. *Richardson Camera Co. v. United States*, 467 F.2d 491, 199 Ct.Cl. 657 (1972).

Nor was the clause oppressive. It required only that plaintiff insure the goods. Plaintiff's failure to insure the goods for their full value—actually he reduced his insurance shortly before the fire—was no fault of the Government. Plaintiff says that the Government delayed shipping GFM and then shipped a very large amount, unfortunately in the plant at the time of the fire. It is not said why this was a legal wrong. Finally, a contention of unconstitutional discrimination against small contractors is frivolous. Contractors large and small can take out insurance when the premiums are defrayed by the Government's contract payments.

None of the attacks on the risk of loss clause are meritorious and the petition must be dismissed.

### CONCLUSION OF LAW

Upon the foregoing opinion, the findings of fact and intermediate conclusions of fact and law, which the court adopts and which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover and the petition is dismissed.