The **AMERICAN SHIP BUILDING COMPANY**

v.

The **UNITED STATES.**

No. 225–74.

United States Court of Claims.

July 1, 1981.

---

Edward M. Shea, Washington, D. C., attorney of record, for plaintiff. Charles Emmet Lucey, William A. Cerillo and McDermott, Will & Emery, Washington, D. C., of counsel.

Ray Goddard, Washington, D. C., with whom was Acting Asst. Atty. Gen. Thomas S. Martin, Washington, D. C., for defendant. Robert Giertz, Washington, D. C., of counsel.

Before DAVIS, NICHOLS, and SMITH, Judges.

## OPINION

NICHOLS, Judge:

The issues presented in this breach of contract case are (1) whether a contract requirement that performance be completed within 900 days is an affirmative representation or warranty by the government that the contract could, in fact, be completed within the stated time, and (2) whether the

government's failure to disclose superior knowledge of delays and cost overruns that occurred in previous contracts prior to the award of this contract amounted to a breach. For the reasons discussed herein, we hold that the government neither made an affirmative representation nor failed to disclose any information which it had a duty to disclose, and therefore plaintiff is entitled to no relief.

Defendant United States Government prosecutes various exceptions to the report of Trial Judge Spector, wherein the trial judge recommended that the government did breach a contract with plaintiff American Ship Building Company. The trial judge reasoned that the government had failed to disclose facts of which it was aware about cost overruns and delays in previous similar contracts, and therefore breached this contract and is liable for similar overruns in the instant case. Additionally, the trial judge found that a 900 day requirement for performance in the contract was effectively a representation by the government that work could be completed within that time. The government attacks that recommendation and contends that it had no obligation on the facts of this case to disclose the history of previous contracts without any request from the contractor. The government further argues that it made no representation that the contract could be completed within 900 days, it merely set a due date. Lastly, the government criticizes the trial judge as biased and prejudiced. It excepts to several of the trial judge's findings, but we have not reviewed the exceptions because the trial judge's conclusions cannot be sustained even on the findings he made. The court's findings of fact are embodied in the opinion.

### Facts

In 1964, the Department of Commerce decided to add a fourth oceanographic research vessel to its fleet. This new vessel, the *Researcher*, was to be smaller and lower powered but with great automation and advanced instrumentation. Problems, however, had occurred in performance of previous contracts. In 1960, the first vessel was delivered 354 days late at a cost in excess of 127 percent of the original estimate. In 1962 contracts were awarded on the second and third vessels, which were to be the first to employ fully Centralized Engineer Room Control (CERC). CERC is an automated system which extends the operator's supervision and control of a ship into all parts of its machinery plant and permits centralized observation and monitoring of the machinery through the use of sensors, microphones, and cameras. The trial judge found that delays and cost overruns in the construction of these two vessels were attributable to problems in the CERC system and the performance of Westinghouse, the subcontractor for the system. The government, however, had consistently attributed these costs to contractor inexperience and inefficiency. It is clear that someone failed to take into account the fact that the CERC represented an advance in the state of the art with all the engineering problems that usually accompany such advances and are eliminated only as production models succeed prototypes. Because of delays, the second vessel was delivered 689 days late for a total construction time of 1,374 days, and the third vessel was delivered 848 days late for a total construction time of 1,492 days.

In developing its cost estimate for the *Researcher*, the Commerce Department used cost data derived from construction of the previous vessels. Overrun costs incurred by the earlier vessels were not included, however, allegedly because these costs were not thought to be legitimate costs of an efficient business operation. An invitation for bids on the *Researcher* was issued on January 7, 1966. Notwithstanding the time overruns of the earlier contracts, the invitation provided that no bid that fixed completion of the vessel in excess of 900 days would be considered.

When plaintiff submitted its bid, it allegedly was unaware of the monetary losses and time overruns suffered by the other shipbuilders. Although testimony illustrated that the CERC system was complex and

plaintiff testified that at the time it prepared the bid, it knew it would have to subcontract the CERC system, it introduced no evidence showing it even bothered to consult with Westinghouse or any other specialized electrical firm prior to preparing the bid, as to what the problems might be. Three bids were received, and the contract was awarded to plaintiff on June 6, 1966, at a contract price of $8,382,431. Westinghouse was the CERC subcontractor. Delivery was due 900 days from the date of award, November 24, 1966. However, the *Researcher* was delivered 511 days late on June 18, 1970. When delivered, the vessel met all of the contract specifications, but at a total asserted cost of $13,155,955.37. Plaintiff claims a total loss of $4,546,383.87, excluding lost profits.

Before the trial judge, plaintiff argued that the government made an affirmative representation that the contract could be performed within 900 days and that it withheld material facts that past contracts had suffered from delays and overruns. Defendant pointed to the entire absence of a nexus in the evidence between the losses of prior contractors, as defendant knew of them, and the losses of plaintiff. The ships were different, the power plants were different, and the CERC system had been specified for enough previous ships, that the problems to be encountered in the *Researcher* might be hoped to have been already solved. At least no evidence was offered to demonstrate otherwise. In fact, the plaintiff introduced no evidence whatsoever as to what the actual problems with the *Researcher* were. In short, defendant's case is that the losses may have been *post hoc* but were in no way shown to be *propter hoc*. Alternatively, plaintiff contended that under the doctrines of either mutual or unilateral mistake, it was entitled to reformation of the contract. For the following reasons we hold the government did not make a representation or warranty that the ship could be completed within 900 days and that it did not withhold material information from plaintiff. Lastly, we hold plaintiff is not entitled to contract reformation.

### 900 Days Requirement

◼ Our interpretation of whether the 900 days requirement is a due date, agreed to by the contractor or a warranty by the government, in effect, will determine which party guaranteed completion within 900 days. A due date can be characterized as a contract requirement establishing when performance by the contractor must be completed. By entering into the contract, the contractor warrants it can perform by the due date. One expects a contractor would examine the specifications provided to determine the complexity of the contract and make inquiries where necessary in light of its own capabilities. The contractor would then make a business judgment in deciding whether it could complete the contract by the due date. How long it takes to perform a contract is a function of the specification requirements and the contractor's capabilities. The bidder knows or should know both before bidding, but the government knows but one, unless it makes a capability survey of the kind familiar in many cases but not found here. By finding that the 900 days was a warranty, the trial judge transposed the situation and made the government a warrantor. *See H. E. Crook Co. v. United States,* 270 U.S. 4, 46 S.Ct. 184, 70 L.Ed. 438 (1926). For a warranty to exist there must be either an affirmation of fact or a promise which relates to performance under the contract. *See, e. g.,* Uniform Commercial Code § 2–313. Such promises may result from the express words of the parties or may be implied by the courts from interpreting the contract. *United States v. Foley,* 329 U.S. 64, 67, 67 S.Ct. 154, 155, 91 L.Ed. 44 (1946). For example, the government is held to warrant the correctness of design specifications contained in a government contract. *United States v. Spearin,* 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166 (1918). In evaluating the actions of the parties in this case, aware of all the surrounding circumstances, and cognizant of the realistic and legitimate expectations of parties to government contracts, we find it beyond "the realm of expectation" that the government either expressly or

impliedly warranted the contract could be performed within 900 days. *See H. E. Crook Co. v. United States, supra.* Rather it invited those who thought they could deliver in 900 days to submit bids. We hold therefore, the 900 day requirement was not a warranty or affirmation but a mere due date.

### Superior Knowledge

■ The trial judge also proposed that under the doctrine of superior knowledge, the government should have disclosed information on prior delays, costs, and risks of performance. The doctrine of superior knowledge is generally applied to situations where (1) a contractor undertakes to perform without vital knowledge of a fact that affects performance costs or duration, (2) the government was aware the contractor had no knowledge of and had no reason to obtain such information, (3) any contract specification supplied misled the contractor, or did not put it on notice to inquire, and (4) the government failed to provide the relevant information. *See e. g., Helene Curtis Industries, Inc. v. United States,* 160 Ct.Cl. 437, 312 F.2d 774 (1963). In *Helene Curtis,* the government was aware the contractor reasonably assumed it could perform the contract without utilizing a grinding process, yet because the government knew grinding was necessary and failed to so inform the contractor, we held the government liable for breach of contract. Likewise, this court has granted relief where the government failed to reveal vital information not readily available concerning site conditions which would increase the contractor's costs. *See Hardeman-Monier-Hutcherson v. United States,* 198 Ct.Cl. 472, 458 F.2d 1364 (1972); *Ragonese v. United States,* 128 Ct.Cl. 156, 161–62, 120 F.Supp. 768, 770–71 (1954).

■ In the instant case the specifications were sufficient to show the plaintiff what was required under the contract. There is no issue of defective or misleading specifications. Also, there was no withholding of a vital fact affecting performance which the government knew plaintiff was un-

aware of. Since the government was not asked about earlier contracts, it might have assumed plaintiff obtained information elsewhere. Even more important, it is difficult to determine what fact the government should have provided plaintiff. It would be irresponsible procurement to seek to deter bidders from bidding, or even seem to do so. The evidence shows the government believed reasonably or unreasonably, but in good faith, that the problems in the earlier contracts were largely attributable to contractor inefficiency and inexperience. Perhaps plaintiff wished the government had prominently displayed in the invitation to bid a proviso that "only knowledgeable and experienced contractors need apply." It is, however, reasonable for the government to assume that a contractor is the best judge of its competency and will exercise good judgment in deciding to bid on a contract.

Without commenting on its merits, we find *Johnson Electronics, Inc.,* ASBCA No. 9366, 1965–1 BCA ¶ 4628, inapposite to plaintiff's situation. There the board found that there was a performance specification; the unit called for had never been manufactured previously; the brief 90 days delivery schedule in the contract indicated the contract could be performed by a small business with no ability to carry on an extended research and development program; and there was no evidence of contractor incompetence. On those facts the board held the contract was impossible to perform. The government's failure to warn small businesses that extensive research and development efforts would be required compounded to its advertising the procurement on a fixed-price, small business set-aside amounted to a failure to disclose vital information. The board held that the government's action was a termination for convenience with costs recoverable. We think the decision can best be explained on the assumption that an award on a small business set-aside carries with it certain implied obligations to protect the contractor against taking on a task too great for it to perform.

In the instant case the specifications were not performance but design. Several ships otherwise different but utilizing the CERC system had been constructed. Unlike *Johnson Electronics, supra*, where the short time limit and small business set-aside misrepresented the nature of the required development and research, there was no misrepresentation here. All plaintiff need do was to evaluate the specifications and decide whether it could complete work by the due date. Prior to submitting its bid, there is no evidence it even consulted with a specialized electronic firm or a contractor with experience in the area. Defendant is not found to have had any way of knowing that details as to the troubles of other contractors for different ships were necessary to plaintiff. Nor was any showing made as to the extent, if any, that plaintiff's losses resulted from causes similar to the causes of loss to prior builders of oceanographic ships. Therefore, plaintiff is entitled to no relief under the doctrine of superior knowledge.

### Mistake

██ Plaintiff also argued it was entitled to relief under the theories of mutual or unilateral mistake. Obviously any mistake on the part of plaintiff was not shared by defendant under the facts found. Defendant was much better informed than plaintiff. Because the trial judge proposed relief under misrepresentation or special knowledge, he thought it unnecessary to discuss whether relief should be granted because of unilateral mistake. We hold plaintiff is not entitled to relief under a mistake theory.

██ Although unilateral mistake may provide grounds for rescinding an executory contract, *Fraass Surgical Mfg. Co. v. United States*, 205 Ct.Cl. 585, 596, 505 F.2d 707, 713 (1974), the contract in issue is not executory. Plaintiff would be limited to reformation. The fact that relief must be by reformation is not an inflexible bar as the contract price is sometimes reformed to reflect what it would have been but for the mistake. For relief, there must be clear and convincing evidence of a genuine unilateral mistake of fact—not an error in judgment. *E. g., Chernick v. United States*, 178 Ct.Cl. 498, 372 F.2d 492 (1967).

██ In the area of bid mistakes, if the contractor makes a mathematical error in preparing the bid, and there is such a disparity between that bid and the other bids or among the bidder's own figures that the government should reasonably be aware there was an error, then the government is obligated to so inform the contractor. The failure of the government to do so is overreaching under the law of equity and justifies reformation. *Chernick v. United States*, 178 Ct.Cl. at 503–505, 372 F.2d at 495–496. In the instant case plaintiff has failed to present sufficient evidence showing any mistake (except in judgment) or that the government should be charged with knowledge there was a mistake. The duty to warn against a mistake of judgment could not be further developed without creating a dilemma for government officials in view of their duty to foster competition, bring in new suppliers, and eliminate instances of sole source procurement. Therefore, plaintiff is not entitled to reformation.

### Nexus

██ The plaintiff's theory was that its proof of a breach was complete in the nondisclosure of the losses under prior contracts and in the supposed warranty the job could have been done in 900 days. The showing of a nexus between these matters and the plaintiff's actual losses was in its view a matter of quantum, which was severed and deferred to a later day. As regards the former contention, this might perhaps be true if the former ships and the *Researcher* had been identical and if the circumstances had not indicated that a change for the better in the degree of difficulty was to be expected, or at least a possibility. It then reasonably might be concluded that defendant was under a duty to warn of the previous disasters, so far as it knew of them to date, because it knew or should have known that the information

would be vital to the bidder, on the same principle that it must warn of an obvious arithmetical mistake in bidding. It might then reasonably be concluded that a bid below the experienced costs of previous contractors so plainly indicated ignorance of something the bidder badly needed to know that a duty to warn arose, and the failure to warn was a breach or was overreaching. We do not so hold even in dictum because it is not this case. When the duty to warn cannot be based on that kind of a situation, as here, it can only be imposed by a court, retroactively, if the actual circumstances of performance show that there was a connection between the information withheld from the bidder and the difficulties the bidder encountered in performance, with both time and cost. There is no easy and obvious connection when the ships are different and the problems with innovative CERC engineering might be supposed to lie in the past. A breach of a duty to warn does not exist as an abstraction, regardless of the need for a warning or the utility a warning would have. Duties are owed to particular individuals in light of their particular problems. The government official is entitled to assume the bidder has been diligent in informing himself from sources within his reach, including intended subcontractors. In borderline situations, talk that would discourage bidders from bidding must be eschewed; the need for the warning must therefore be manifest. In this particular case, we have no doubt, the defendant rightly relied on the absence of a showing of nexus to justify closing its proofs and demanding judgment on the plaintiff's case.

### Bias

The government contends that the trial judge was personally biased and that his findings are not entitled to a presumption of correctness. Because we hold against plaintiff on the merits, we need not address the prejudice claim here. We add, however, that the allegations of defense counsel are not of a nature to be overlooked, regardless of the outcome of the case. Not having as yet investigated them, we do not lend them credence by repeating them here. They reflect on the ability of the court to supervise the conduct of its trials. They are being considered and will be dealt with independent of this adjudication.[1]

Therefore, this court holds that the 900 day requirement in the contract was a due date not an affirmative representation or warranty and that the government did not fail to disclose superior knowledge. Thus plaintiff is not entitled to recover for breach of contract. Also, the plaintiff failed to show it was entitled to relief of a mutual or unilateral mistake. Judgment is hereby entered for defendant and plaintiff's petition is dismissed.

---

1. The court did conduct an investigation and determined that no further action was called for, but did not publish any announcement of the result.