**JOE LEMOINE CONSTRUCTION, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 95–489C.

United States Court of Federal Claims.

June 12, 1996.

Anthony C. D'Antonio, Metairie, LA, for plaintiff.

John P. Sholar, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant. Ellen Evans, Department of the Navy's Naval Facilities Engineering Command, of counsel.

## ORDER

MILLER, Judge.

This case is before the court on defendant's motion for summary judgment. There are two issues to be resolved: 1) whether the contract required completion within 135 calendar days from the date of the contract award, regardless of when the contractor obtained the required performance bonds and the Government approved them; and 2) whether a bilateral modification changing the sequence of work, but providing for no additional time or compensation, prohibits the contractor from claiming for additional time absent reservation of a claim. Argument is deemed unnecessary.

## FACTS

The following facts are undisputed, unless otherwise noted. On September 27, 1993, the Naval Facilities Engineering Command ("NAVFAC") awarded contract No. N62467–

91–C–7223 to Joe Lemoine Construction, Inc. ("plaintiff"). The $123,100.00 contract required plaintiff to renovate and upgrade the bathrooms in Building 602 at the Naval Support Activity East Bank in New Orleans, Louisiana. Specifically, plaintiff was to enlarge Bathroom Area "2A," a women's bathroom, and to add a men's bathroom. Plaintiff was also to renovate Bathroom Area "2C," consisting of both a men's and women's bathroom.

Per Solicitation No. N62467–91–B–7223, the Department of the Navy (the "Navy") stated that the successful contractor was to begin construction within 10 calendar days of the award and that performance was to be completed within 120 calendar days of the award. Accompanying the solicitation were instructions for potential bidders. These instructions required the submission of payment and performance bonds within 10 days of the contract award. Paragraph 14 of the Instructions to Bidders states: "The contract time for purposes of fixing the completion date, default, and liquidated damages shall begin to run 15 days from the date of award, regardless of when performance and payment bonds are executed." Section 01010 ¶ 1.6 of the contract provides:

> The work shall be completed within 120 calendar days. For purposes of computing the contract completion date, 15 calendar days will be added to this completion time to allow for mailing of the contract award and the submission and approval of required bonds. The contract completion date will therefore be 135 calendar days from the date of the contract award.

Because the contract was awarded to plaintiff on September 27, 1993, the contract completion date was February 9, 1994.

To ensure timely performance, NAVFAC requires that all construction contracts in excess of $25,000.00, other than cost-plus-fixed-fee contracts, or those wherein the contractor cannot control the pace of performance, include a liquidated damages clause. *See* NAVFAC's Contracting Manual, P–68, 1987, Subpart 12.2, 12.203–100. For construction contracts with an estimated cost between $100,00.00–$500,000.00, the liquidated damages are set at $200.00 per calendar day of delay. Section 01010 ¶ 1.7 of the contract set liquidated damages at $200.00 per calendar day of delay.

The September 27, 1993 award letter required plaintiff to contact the Navy to schedule a pre-construction conference. After waiting for over a week, the Navy contacted plaintiff on October 5, 1993, and scheduled a pre-construction conference for October 13, 1993. At this conference the Navy reviewed a list of the required administrative materials, such as the performance and payment bonds, that were required before plaintiff could commence on-site work.[1]

During this conference the Navy and plaintiff also reviewed the sequence in which plaintiff would perform the contract. As the Navy wanted to ensure that at least one women's and one men's bathroom remained fully functional at all times, the contract prohibited the contractor from working on more than one bathroom at once.[2] Consequently, the contract was to be completed in four separate phases.

Several weeks after the pre-construction conference, plaintiff had yet to provide the requisite administrative materials that would permit on-site construction to commence. On December 3, 1993, the Navy met with plaintiff to discuss the lack of progress. Subsequently, on December 10, 1993, the Navy sent plaintiff a proposal to modify the contract by permitting plaintiff to work on two bathrooms at once, thus reducing the contract from four phases to two phases. In a counter-proposal plaintiff requested a 76–day time extension. The Navy denied plaintiff's request for an extension, on the ground that the proposed modification would reduce, not add, performance time.

---

1. By the September 27, 1993 award letter, the Navy first apprised plaintiff of the required administrative materials. This letter expressly stated that, until the required administrative materials were submitted and approved, on-site construction work could not commence.

2. Sheet A–1 of the drawings for the contract states that "[t]he contractor will only be allowed to work on one head at a time. All other heads will be required to remain fully (100%) operational during construction."

On December 27, 1993, the parties met and agreed to Modification No. P00001 ("Mod P00001"), which reduced the contract from four phases to two phases.[3] Mod P00001 states that "[a]s a result of the Modification agreed to herein, the total contract price is not changed and the contract price remains at $123,100.00. The contract period of performance remains unchanged, as well." The modification also contains a release which provides:

> In consideration of the modification agreed to herein as complete equitable adjustment of the Contractor's 27 December 1993 "Proposal for Adjustment," the Contractor hereby releases the Government from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstance giving rise to the "Proposal for Adjustment."

During the negotiations surrounding Mod P00001, plaintiff finally submitted the performance bonds, which the Navy approved on December 20, 1993.[4] Plaintiff received confirmation of the Navy's acceptance of the bonds during the December 27 meeting regarding Mod P00001.

On February 18, 1994, plaintiff executed Modification No. P00002 ("Mod P00002"), which required plaintiff to remove and replace certain asbestos tiles. Under the terms of the modification, the contract price was increased by $2,733.00 and the performance deadline was extended three calendar days until February 12, 1994. Therefore, for purposes of this motion, the completion date is deemed to be February 12, 1994.

Construction began on December 28, 1993, and was completed on May 19, 1994, 96 days beyond the completion date. Therefore, on June 17, 1994, the Navy issued unilateral contract Modification No. P00003, downwardly adjusting the final amount due by the sum of $19,200.00.[5]

Plaintiff submitted a claim to the Navy on August 26, 1994, seeking return of the liquidated damages withheld for untimely contract completion.[6] On March 28, 1995, the contracting officer issued a final decision denying plaintiff's claim for return of the liquidated damages. On August 1, 1995, plaintiff filed a complaint in the United States Court of Federal Claims seeking payment of $19,200.00 withheld by the Navy as liquidated damages.

Defendant moved for summary judgment on the ground that the contract expressly required that performance be completed within 135 calendar days from the date of contract award. Defendant maintains that because plaintiff was 96 calendar days late, the Navy properly imposed liquidated damages in the amount of $19,200.00. Plaintiff proffers two arguments. First, plaintiff contends that the contract completion date was not 135 calendar days from the date of the award. The gravamen of plaintiff's argument is an alleged contradiction between the contract's requirement that all administrative formalities be complied with prior to the commencement of on-site work and the requirement of completing performance within 135 days of award. Second, plaintiff asserts that Mod P00001 sufficiently altered the terms of the contract so as to excuse the lack of timely performance.

## DISCUSSION

Summary judgment is appropriate when there are no disputes over material facts, or

---

3. The modification was executed by plaintiff on February 7, 1994 and by the Navy on February 22, 1994.

4. While the Navy approved the bonds on December 20, 1993, an administrative error caused the acceptance letter to plaintiff to be sent to the wrong address. Therefore, plaintiff did not receive notice of the acceptance until December 27, 1993. In a June 1, 1994 letter to the Navy, plaintiff asserted that the Navy's error caused approximately five calendar days of delay for which it was not responsible and which were beyond its control. However, for the purposes of this motion, both parties have agreed that plain-

tiff was notified of the Navy's acceptance of the performance bonds on December 20, 1993.

5. 96 days × $200.00/per day provides a total of $19,200.00.

6. Plaintiff's original claim sought damages of $26,514.00. Of this amount $19,200.00 consisted of money withheld for the purposes of liquidated damages. The remaining shortfall was due to work for which plaintiff had neglected to invoice the Navy. Plaintiff having now delivered the invoice, the amount remaining in controversy is $19,200.00 in liquidated damages.

over facts that might significantly affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). For example, "an evidentiary conflict created on the record . . . by a knowledgeable affiant" raises a question of material fact. *Barmag Barmer Maschinenfabrik AG v. Murata, Ltd.,* 731 F.2d 831, 836 (Fed.Cir.1984). The moving party meets its burden by showing the "absence of evidence to support the non-moving party's case." *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1563 (Fed.Cir. 1987) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1987)).

■■■ Contract interpretation is a matter of law resolvable by summary judgment. *Muniz v. United States,* 972 F.2d 1304, 1309 (Fed.Cir.1992); *Fortec Constr. v. United States,* 760 F.2d 1288, 1291 (Fed.Cir.1985); *P.J. Maffei Bldg. Wrecking Corp. v. United States,* 732 F.2d 913, 916 (Fed.Cir.1984). When seeking to resolve a question of contract interpretation, the court's primary goal is to ascertain the intent of the contracting parties. *Beta Sys., Inc. v. United States,* 838 F.2d 1179, 1185 (Fed.Cir.1988) (citing *S. Williston, A Treatise on the Law of Contracts* § 601 (3d ed. 1961)). Finding an interpretation that imparts reasonable meaning to the entire contract is preferred to one that leaves portions of the contract meaningless. *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1555 (Fed.Cir.1983) (followed in *Fortec,* 760 F.2d at 1292). While construction of an unambiguous writing is a matter appropriate for summary judgment, language that is reasonably susceptible to more than one interpretation may be considered ambiguous and thus not appropriate for summary judgment. *Davis v. Chevy Chase Fin. Ltd.,* 667 F.2d 160, 169 (D.C.Cir.1981). However, a contract is not rendered necessarily ambiguous merely because the parties disagree over the meaning of a particular contract provision. *Perry & Wallis, Inc. v. United States,* 192 Ct.Cl. 310, 315, 427 F.2d 722, 725 (1970).

### 1. *Plain meaning of the contract*

■■■ Defendant argues that the contract expressly requires performance to be com-

pleted within 135 calendar days of the award. Plaintiff counters that the time for performance did not begin to accrue until the Navy accepted the performance bonds. When construing a written agreement, the court will give the words of the agreement their plain and ordinary meaning. *Thanet Corp. v. United States,* 219 Ct.Cl. 75, 82, 591 F.2d 629, 633 (1979). "In construing a contract, the language of the instrument is given its ordinary and commonly accepted meaning. . . ." *Hol–Gar Mfg. Corp. v. United States,* 169 Ct.Cl. 384, 390, 351 F.2d 972, 976 (1965). The court will not read a written agreement so as to create ambiguity. *George Hyman Constr. Co. v. United States,* 832 F.2d 574, 581 (Fed.Cir.1987).

■■■ In this case plaintiff is asking the court to wrest an ambiguity from a clear and unambiguous contract. The Navy's solicitation explicitly provided that performance was to begin within 10 calendar days of the contract's award and was to be completed within 120 calendar days of the award. Consistent with the solicitation, ¶ 14 of the Instructions to Bidders expressly states:

> Within 10 days after receipt of award the bidder to whom award is made shall furnish two bonds, each with satisfactory security; namely, a performance bond . . . and a payment bond. . . . The contract time for purposes of fixing the completion date, default, and liquidated damages shall begin to run 15 days from the date of award, regardless of when performance and payment bonds are executed.

Section 01010 ¶ 1.6 of the contract provides that "[t]he contract completion date will . . . be 135 calendar days from the date of contract award." The 135 calendar days are expressly divided into 120 days for performance of the contract and 15 calendar days for the submission and approval of the required bonds. Section 01010 ¶ 1.7 of the contract states that the contractor is subject to liquidated damages in the amount of $200.00 per calendar day of unexcused delay. Thus, the contract stipulates the number of calendar days allotted for performance, the commencement of the time allotted for performance, and the amount of liquidated dam-

ages that would be imposed per calendar day of unexcused delay.

Not only was the contract itself clear and unambiguous, but the Navy reemphasized its terms to plaintiff on numerous occasions. On September 28, 1993, the Navy sent plaintiff a letter specifying the administrative materials that were required before on-site performance would be permitted. At the October 13, 1993 pre-construction conference, plaintiff was informed of the terms of the contract. Plaintiff received letters on November 10, 1993, and December 21, 1993, stating that the work was behind schedule and that liquidated damages would be imposed for any unexcused delay. Finally, the Navy contacted plaintiff by telephone on November 19 and 30, 1993, expressing concern over the lack of progress.

Plaintiff's argument that the time for performance did not begin to accrue until the Navy accepted the performance bonds contradicts the express terms of the contract. Moreover, taking plaintiff's argument to its logical conclusion would produce the anomalous result that plaintiff, by continually failing to submit the performance bonds, could delay performance indefinitely without ever incurring liquidated damages. Given the clear contract language, such an outcome cannot have been the intent of the parties when they entered into the contract.

### 2. *Failure to reserve rights*

Plaintiff's second argument in opposition to defendant's motion is that Mod P00001 served to excuse its lack of timely performance. However, in order for plaintiff to assert a claim that the modification excuses untimely performance, the right to assert such a claim had to be reserved explicitly at the time of modification. *See Cannon Constr. Co. v. United States,* 162 Ct.Cl. 94, 101, 319 F.2d 173, 177 (1963). Failure to reserve that right will cause the subsequent claim to be barred. *See id.* 162 Ct.Cl. at 100, 319 F.2d at 176; *see also Fraass Surgical Mfg. Co. v. United States,* 205 Ct.Cl. 585, 594, 505 F.2d 707, 712 (1974) (noting that supplemental agreement between the Government and contractor serves as bar to all claims not explicitly reserved). Had plaintiff wanted to reserve the right to assert claims for a time extension, language to that effect should have been contained in the modification.

In the negotiations surrounding Mod P00001, plaintiff unsuccessfully requested a 76-day time extension. The parties did agree to modify the contract so that plaintiff could work on two bathrooms at once, but no time extension was included in the modification. The intent and effect of the modification were to reduce construction time to assist plaintiff in meeting the contract's performance deadline, thus obviating the need for a time extension. As a consequence the modification explicitly provides that "[t]he contract period of performance remains unchanged."

The release provision of Mod P00001 released the Navy from any and all liability "for further equitable adjustments attributable to such facts or circumstance giving rise to the 'Proposal for Adjustment.'" Having failed to negotiate the inclusion of a time extension into the language of Mod P00001, plaintiff was obligated to reserve explicitly the right to assert that the modification excuses untimely performance, not release the Navy from future liability. The language of Mod P00001 is clear and without ambiguity. Since plaintiff failed to reserve the right to assert that the contract modification could excuse its lack of timely performance, plaintiff may not do so now. *Cannon Constr.,* 162 Ct.Cl. at 100, 319 F.2d at 176; *see also Brock & Blevins,* 170 Ct.Cl. 52, 58–59, 343 F.2d 951, 954–55 (1965) (holding that failure to reserve the right to assert future claims resulting from bilateral modification precludes recovery).

### CONCLUSION

Accordingly, based on the foregoing, defendant's motion for summary judgment is granted. The Clerk of the Court shall enter judgment dismissing the complaint.

**IT IS SO ORDERED.**

No costs.