### RICHARDSON CAMERA COMPANY, INC.
#### v.
### The UNITED STATES.
#### No. 126–71.
United States Court of Claims.
Oct. 13, 1972.

Adelbert C. Matthews, Jr., New York City, attorney of record, for plaintiff. Havens, Wandless, Stitt & Tighe, New York City, of counsel.

Michael J. Rubin, Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant.

Before COWEN, Chief Judge, DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### PER CURIAM:

In this case involving a supply contract, the Government has filed a motion for summary judgment pursuant to Rule 163(b)(1) in response to the plaintiff's petition to this court following an order to dismiss entered by the Armed Services Board of Contract Appeals (ASBCA No. 13895). The petition concerns a contract (No. 3037) entered into by the plaintiff, Richardson Camera Company, and the Central Intelligence Agency in June 1961 for three items: a film viewer, a reader, and a counter. After several changes and subsequent agreements, the contracting officer on April 2, 1965, ordered work stopped on the project and requested that the plaintiff submit a cost proposal for settlement. On April 9, 1965, the contractor responded by submitting a breakdown of its costs along with suggested new contract prices or a termination at cost without profit.

Following an audit of the plaintiff's accounts, the contracting officer on October 7, 1965, sent the contractor a letter stating that if items Nos. 2 and 3 (the reader and counter) did not pass a preliminary inspection by October 26, 1965, the contract would be terminated for default. This same letter lifted the stop-work order.

In the preliminary inspection that followed, items 2 and 3 of the contract did not meet specifications and the contract was terminated by a letter from the contracting officer dated November 11, 1965, reading as follows:

> Reference is made to our letter of 7 October 1965 and to our letter of 27 October 1965 extending to 10 November 1965 the time in which you were to correct all deficiencies and to ship to us one each of Items 2 and 3 called for under this contract.
>
> In view of your failure to ship these items by that date, this contract is hereby terminated for default pursuant to Article 11 thereof.

> The Government reserves all rights available to it by reason of this default.

In a letter dated November 18, 1965, the contractor requested the contracting officer to reconsider the default termination and to terminate for convenience of the Government. The contracting officer responded in a second letter on November 30, 1965, which in pertinent part reads:

> For the reasons indicated in our previous correspondence, we feel we are unwarranted in altering our action in this case. Under the circumstances, the termination for default must stand.

After the receipt of this letter, the plaintiff, on December 9, 1965, wrote the following letter which is the focus of this petition:

> We have your letter of 30 November 1965 stating that the termination for default on subject contract must stand.
>
> This default action could be understood by us if this was the production phase of subject contract. However, we have produced development work on this contract during a period of several years while your specifications have been radically changed from time to time.
>
> Due to the large amount of our working capital invested in the prototype units of Items 2 and 3, a termination for default would impose a very serious hardship on our firm.
>
> We respectfully ask that you again consider the "development" nature of our effort and advise if further reconsideration can be granted for a termination other than for default, *or advise if we have any recourse for further review.* [Emphasis supplied.]

In response to this final paragraph in plaintiff's letter the contracting officer sent a third letter dated December 22, 1965, in which he reconfirmed the default termination and went on to state:

> As to your request that we advise if you "have any recourse for further re-

view", we refer you to the terms of the subject Contract.

Thus, in the course of two months, the plaintiff contractor was notified on three separate occasions that contract No. 3037 had been terminated for default. Thereafter, the price for item 1 was redetermined, defendant recaptured some progress payments made, and on February 11, 1966, defendant, in reply to plaintiff's protests, wrote that these procedures were pursuant to earlier agreement of the parties. On February 18, 1966, plaintiff wrote the following to the contracting officer:

> Your letter dated 11 February, 1966 has been received with regard to your letter of 11 November, 1965 wherein our contract was terminated for default.
>
> *We wish to be advised if there is anything further required to close the file on this contract.* We have a fiscal year ending 3/31/66 and we wish to determine before that date our actual losses sustained during our performance on your development work.
>
> Your early reply will be appreciated. [Emphasis supplied.]

Following this letter, the plaintiff did not again raise the matter until May 18, 1966, when, with the aid of counsel, it requested "all rights granted under the dispute clause of the Subject Contract," thereby noting its appeal to the default termination of contract No. 3037.

While this correspondence was being exchanged, the parties were also involved in the termination of a related contract (No. 6325) which called for the production of two prototype viewers for the C.I.A. On April 2, 1968, the ASBCA converted the default termination on contract No. 6325 to one for convenience. (*See,* Appeal of Richardson Camera Co., Inc., under contract No. 6325, ASBCA No. 11930, 68–1 BCA ¶ 6690.) Shortly, thereafter, on September 6, 1968, the attorney representing the contractor notified the contracting agent that he intended to pursue an appeal of the default termination of contract No. 3037 and that he considered the contracting officer had not issued a final decision or that, alternatively, plaintiff had properly appealed it and defendant had failed to notify the board of the appeal. It was also stated that the default termination was invalid. After a hearing, however, the ASBCA, on February 10, 1970, granted the Government's motion to dismiss the contractor's claim as untimely since no notice of appeal was given by the contractor within 30 days of the final default-termination decision.

The contractor now petitions this court for relief. In response, the Government seeks summary judgment on the plaintiff's petition while the contractor seeks, alternatively, a reversal of the board's decision or a suspension of this court's procedure for 90 days to permit the plaintiff to seek a discretionary waiver of the board's 30-day appeal limitation. (*See,* Maney Aircraft Parts, Inc. v. United States, 197 Ct.Cl. 159, 453 F.2d 1260 (1972).

Defendant's motion to dismiss poses two primary issues which must be resolved. First, was the letter dated November 11, 1965, sent by the contracting officer to plaintiff Richardson a final decision, and if so, was the reply by the contractor on December 9, 1965, a valid notice of appeal for the purposes of the Disputes Clause?

■ In dealing with these issues the parties first clash over the weight this court should give the prior decision of the ASBCA on these issues (ASBCA No. 13895). The cases on this matter are quite clear. The issue of timeliness of an appeal is a question of law for the court to decide. Moran Bros. v. United States, 346 F.2d 590, 593, 171 Ct.Cl. 245, 251 (1965). In Anthony Grace & Sons v. United States, 345 F.2d 808, 819–820, 170 Ct.Cl. 688, 707 (1965), rev'd on other grounds, 384 U.S. 424, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966), this court said:

> In considering the issue of timeliness of plaintiff's appeal to the Armed Services Board of Contract Appeals, it is apparent that the question

presented, namely, interpretation of the provisions of the contract documents which set forth the specifics of an appeal and the corresponding interpretation of the effect of letters which allegedly constituted "decisions" and/or "appeals," is a question of law; * * *.

Thus, the issues in the case concern questions of law for the court to decide based on the board's findings of fact.

The first issue is whether the November 11, 1965, letter was in fact a "final decision" by itself or only in conjunction with the two subsequent letters written by the contracting officer. It should first be pointed out that this contract between the C.I.A. and Richardson is not specifically covered by ASPR since it was not incorporated into the contract. The ASPR in question, 32 C.F.R. § 8.-602–3(d)(6), requires a notice of termination to include a terminal paragraph specifically telling the contractor not only that he is in default but that he has the right to appeal the decision, as specified in the Disputes Clause which here says:

> * * * The decision of the Contracting Officer shall be final and conclusive unless, within 30 days from the date of receipt of such copy, the Contractor mails or otherwise furnishes to the Contracting Officer a written appeal addressed to the Secretary. * * *.

The C.I.A. is not one of the armed services to which the ASPR applies. Thus, the ruling in Bostwick-Batterson Co. v. United States, 283 F.2d 956, 959, 151 Ct.Cl. 560, 565 (1960), where the final termination notice of an *Army* contract did not contain the required clause, thereby making the notice ineffective, is inapplicable to these facts. The question then remains, what standards should the court apply in determining the finality of the notice in question?

■ No magic formula exists for determining what constitutes "finality" absent a specific statutory requirement. Certainly the precise word "final" is not required if a sufficient equivalent is used. In United States v. Hammer Contracting Corp., 331 F.2d 173 (2d Cir. 1964), the contracting officer sent the defendant a letter which did not contain the word "final" but, by its own terms, was the last letter on the matter. The court held that since an ordinary reading of the letter would have indicated finality, this notice was sufficient to start the running of the 30-day appeal period. In that case the applicable VA statute did not require a terminal paragraph repeating the appeal terms given in the Disputes Clause. Therefore, the absence of such a paragraph in the notice did not prevent it from being "final."

■ This court in Poloron Products, Inc. v. United States, 126 Ct.Cl. 816, 116 F.Supp. 588 (1953), came to a similar conclusion where it held that a notice was final where it gave sufficient notice of the decision, the grounds for the decision, and its finality. Thus, the ordinary reading test seems to be the general standard applied by this and other courts. In the case at hand, it seems apparent from the letter of November 11, 1965, that an ordinary reading would clearly suggest finality to the contractor. This would certainly be true in light of the letters of November 30, 1965, and December 22, 1965, sent by the contracting officer which reaffirmed the termination decision. However, these two later letters only reiterate what should already have been clear. Therefore, in the absence of a requirement for a terminal paragraph, the notice sent on November 11, 1965, should be deemed final.

■ The plaintiff has argued that the Armed Services Procurement Regulations should apply to these facts since the Government used them at times to help interpret some standard clauses in the contract. While the Government officials should not use the ASPR provisions only when it suits them, it does not appear that the contractor, in this case, should be held to have been prejudiced by the failure to include the terminal paragraph. By the Government's

letter of December 22, 1965, the contractor was referred specifically to the terms of the contract, if further review was desired, and the contractor still did not respond within 30 days by an appeal addressed to the Secretary, as the Disputes Clause required. Failure to read the terms of a contract, particularly when so directed, cannot be used as a defense to the consequences of such an omission. Schoeffel v. United States, 193 Ct.Cl. 923, 935 (1971).

Given this view that the decision by the contracting officer was in fact "final," there still remains the question of whether the letter sent by Richardson Camera Company on December 9, 1965, was a sufficient notice of appeal. This is the only letter the contractor sent within 30 days of any of the three notices of termination that might be termed a notice of appeal. In this letter, after expressing the hardships which the termination would cause, the contractor in pertinent part said:

> We respectfully ask that you again consider the "development" nature of our effort and advise if further reconsideration can be granted for a termination other than for default, *or advise if we have any recourse for further review.* [Emphasis supplied.]

In deciding if this language constitutes a sufficient notice of appeal, several general rules should be kept in mind.

■■ First, the boards have, generally, adopted a liberal view in determining what constitutes a notice for appeal. *See,* Metrophysics, Inc., NASA BCA No. 171-2, 71-2 BCA ¶ 9044, and D & E Constr. Co., VACAB No. 561, 66-2 BCA ¶ 5920. This is explained by the fact that the appeals must be noted in a relatively short time after the final decision and often without aid of counsel, thereby necessitating wide variations in form. In *Metrophysics, supra,* the NASA BCA required three elements for a letter to constitute a notice of appeal. The notice must: (1) be in writing; (2) show dissatisfaction with the contracting officer's decision; and (3) express an intent to go to a higher authority. It is this final requirement which presents the difficulty in this case. An ordinary reading of the contractor's letter would seem to indicate that he was merely asking for information as to possible further review. Without getting into the possible variations based on the disjunctive form of the paragraph in question, it seems clear that the mere request for information does not necessarily imply an immediate intent to process an appeal.

This conclusion is supported by reference to Midtex, Inc., AEMCO Div., ASBCA No. 13578, 69-1 BCA ¶ 7503, where the plaintiff stated in a timely letter: "We wish to request a redetermination of excess costs based on the enclosed information." Here the board said that a mere request for a redetermination was not sufficient to indicate an intent to appeal.

This conclusion, in the case at hand, is further supported when the interpretation given the various letters is examined in light of subsequent events. For example, in Hanley Industries, Inc., ASBCA No. 13569, 69-1 BCA ¶ 7684, the contractor's letter in question read: "Meanwhile, you may advise SPCC [the procurement contracting activity] that we will appeal their attempted extortion, with documentation." This was clearly a notice of appeal until the board found the contractor had taken no steps to prosecute the claim after repeated delays, causing them to find that no present intent to appeal was meant by this letter. In the case at hand, Richardson Camera Company sent a letter on February 18, 1966, seeking to find out if anything further was required "to close the file on this contract." No mention of any appeal was made in this letter. The company seemed to view the case as closed. This fact standing by itself means very little, but when combined with the fact that the appeal of this matter was not pressed until Sep-

tember 6, 1968, after a favorable decision in the case involving the termination of contract No. 6325, it looks less like a present intent to appeal existed on December 9, 1965, when the contractor wrote the letter in question. The conclusion to be reached from these facts is that the December 9, 1965 letter was not intended, at that time, to be a notice of appeal and cannot be viewed as such now. This conclusion is maintained despite the plaintiff's argument that only one case at a time was appealed due to financial limitations. This may be true, but begs the question of plaintiff's failure to note an appeal to the Secretary as the Disputes Clause required. Even if plaintiff's argument were accepted it does not change the fact that to view the wording in the letter as a notice of appeal would do violence to the ordinary meaning it conveys.

■ The issue remains whether this court should suspend its action for 90 days while the plaintiff is permitted to seek a discretionary waiver from the board. In Monroe M. Tapper & Associates v. United States, 198 Ct.Cl. 72, 458 F.2d 66 (1972), the court listed several factors it would consider in permitting such 90-day suspensions. First, was there possible prejudice to the Government? Second, was the delay in noting the appeal within the contractor's control? Finally, what was the nature of the relative conduct between the Government and the contractor? While the contractor might have jumped to a conclusion, by the Government's original requests for settlement costs, that a termination for convenience was contemplated, it is apparent that the delay was, in vital part, a product of the contractor's own neglect and that, since all the pertinent facts appear to have been raised at the initial board hearing, a suspension to permit an appeal for a discretionary waiver would seem to serve little purpose and is without good cause.

For the foregoing reasons, plaintiff is not entitled to recover. Defendant's motion for summary judgment is granted. The petition is dismissed.