**TIPPERARY REFINING CO.**

v.

**The UNITED STATES.**

**DEMENNO/KERDOON**

v.

**The UNITED STATES.**

**Nos. 283–86C, 299–86C.**

United States Claims Court.

Jan. 23, 1987.

Harry R. Silver, Washington, D.C., attorney of record for plaintiff in No. 283–86C. David A. Donohoe, Jerry E. Rothrock, and Akin, Gump, Strauss, Hauer & Feld, of counsel.

Dina R. Lassow, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant. Peter J. Schaumberg and Geoffrey Heath, Dept. of Interior, of counsel.

Richard H. Streeter, Washington, D.C., attorney of record for plaintiff in No. 299–86C. Wheeler & Wheeler, of counsel.

## MEMORANDUM OF DECISION

HARKINS, Senior Judge:

These cases come before the court on defendant's motions to dismiss for lack of jurisdiction over the subject matter or for failure to state a claim for which relief can be granted. Oral argument was heard on both cases on January 21, 1987. For the reasons stated below, the complaints are to be dismissed.

Plaintiffs are small business refiners whose only source of crude oil is that obtained from other sources. These cases are concerned with plaintiffs' contracts to purchase Government royalty oil from the United States Geological Survey (USGS), a part of the Department of Interior (DOI).

Tipperary Refining Co., plaintiff in case No. 283–86C, on June 5, 1980, entered an agreement for the sale and purchase of Government royalty oil pursuant to the Outer Continental Shelf Lands Act of 1953 (OCSLA). 43 U.S.C. §§ 1331 et seq. (1982). DeMenno/Kerdoon, plaintiff in case No. 299–86C, on June 3, 1980, entered an agreement for the sale and purchase of Government royalty oil pursuant to the OCSLA. The two contracts under the OCSLA are referred to as offshore contracts; each had 3–year terms, from July 1, 1980, to July 1, 1983. The offshore contracts were on standard DOI forms, and the terms relevant to plaintiffs' claims are identical.

DeMenno/Kerdoon, on June 1, 1980, entered an agreement for the sale and purchase of Government royalty oil pursuant to the Mineral Lands Leasing Act of 1920, as amended, (MLLA). 30 U.S.C. §§ 181 et seq. (1982). This contract was for onshore royalty oil; its term was from June 1, 1980, to June 1, 1983, and it was on a standard DOI form.

In January 1982, the Secretary established the Minerals Management Service (MMS), and transferred responsibility for administering the royalty oil program from the USGS to MMS. Secretarial Order No. 3071 (Jan. 19, 1982).

In both the MLLA and the OCSLA, Congress required, in substance, that the Secretary realize from sales of royalty oil at least the same amount of money for the Government that it would have if the royalties were taken in value rather than in kind. 30 U.S.C. § 192; 43 U.S.C. § 1334(a)(1) (1976). In 1978, Congress amended the OCSLA to provide that offshore royalty oil could be sold "for not more than its regulated price, or, if no regulated price applies, no less than its fair market value." 43 U.S.C. § 1353(b)(1).

Plaintiffs' contracts were made in DOI's onshore and offshore royalty oil programs. The MLLA and OCSLA authorize the Secretary of the Interior to grant oil and gas leases on federally owned lands and on submerged lands of the Outer Continental Shelf. The Secretary may elect to take

royalties accruing to the United States under such leases at the monetary value, or in oil. 30 U.S.C. § 192; 43 U.S.C. § 1353(a)(1). If taken in kind, the royalty oil may be sold to a defined class of small, independent refiners, such as plaintiffs. 30 U.S.C. § 192; 43 U.S.C. § 1353(e)(2).

From August 1973, to January 28, 1981, sales of Government royalty oil were subject to the pricing and allocation controls authorized under the Economic Stabilization Act of 1970, as amended, (ESA) (12 U.S.C. § 1904 note (1982)) and the Emergency Petroleum Allocation Act of 1973, as amended (EPAA) (15 U.S.C. §§ 751 et seq. (1982)). In August 1973, mandatory price controls on the sale of domestic crude oil and petroleum products initially were included in Phase IV of the Economic Stabilization Program by the Cost of Living Council (CLC) pursuant to the ESA.

The EPAA, signed November 27, 1973, directed the President to implement a mandatory petroleum allocation program to minimize dislocations in the distribution of petroleum products, to meet priority needs, and to reduce the impact of such shortages on the American people and the domestic economy. Section 4(a) of the EPAA (15 U.S.C. § 753(a)) required the President to promulgate regulations providing for the mandatory pricing and allocation of crude oil. To carry out the policy goals of the EPAA, the President established the Federal Energy Office (FEO) which, in January 1974, issued Mandatory Petroleum Allocation and Price Regulations. On the pricing side, the FEO's regulations carried forward the CLC's regulations. 39 Fed.Reg. 1924 (Jan. 15, 1974). Responsibility for the regulation of petroleum pricing and allocation under the EPAA subsequently was transferred to the Federal Energy Administration, and to the Department of Energy. Department of Energy Organization Act, 42 U.S.C. §§ 7101 et seq. (1982).

Section 5(a)(1) of the EPAA incorporates by reference the regulatory scheme of the ESA, including the comprehensive system of judicial review provided through section 211 of the ESA. 15 U.S.C. § 754(a)(1). Section 211(a) in pertinent part provides:

(a) The district courts of the United States shall have exclusive original jurisdiction of cases or controversies arising under this title, or under regulations or orders issued thereunder, notwithstanding the amount in controversy.

Section 211(b) in pertinent part provides:

(b)(1) There is hereby created a court of the United States to be known as the Temporary Emergency Court of Appeals, which shall consist of three or more judges to be designed by the Chief Justice of the United States from judges of the United States district courts and circuit courts of appeals. . . .

(2) Except as otherwise provided in this section, the Temporary Emergency Court of Appeals shall have exclusive jurisdiction of all appeals from the district courts of the United States in cases and controversies arising under this title or under regulations or orders issued thereunder. Such appeals shall be taken by the filing of a notice of appeal with the Temporary Emergency Court of Appeals within thirty days of the entry of judgment by the district court.

All regulatory controls on prices were removed on January 28, 1981, by Executive Order No. 12287, 46 Fed.Reg. 9909 (Jan. 30, 1981).

Tipperary's complaint, filed May 6, 1986, invokes the Tucker Act jurisdiction of this court (28 U.S.C. § 1491(a)(1) (1982)) and alleges defendant breached its offshore contract, unlawfully exacted money belonging to plaintiff, and took plaintiff's money without just compensation in violation of the 5th Amendment. DeMenno/Kerdoon's complaint, filed May 13, 1986, invokes the Tucker Act jurisdiction. The complaint alleges defendant breached the offshore and onshore contracts as a result of DOI's refusal to comply with the EPAA, DOE's regulations, and 1978 OCSLA amendments; that defendant unlawfully exacted money belonging to plaintiff as a result of DOI's breaches of its contracts, and that defendant took DeMenno/Kerdoon's property in

violation of the 5th Amendment by charging prices for crude oil in excess of those permitted in the contracts. Both plaintiffs contend the complaints spell out the types of claims recognized in the Tucker Act: (1) breach of contract, (2) violation of federal statutes and regulations, (3) unlawful exaction of monies, and (4) 5th Amendment takings of property. Tipperary seeks damages of at least $2 million on its claims, and DeMenno/Kerdoon seeks damages on all claims in both contracts of at least $3 million.

Prior to filing their complaints in this court, plaintiffs had attempted to recover for alleged violations of DOE price regulations through procedures under the EPAA. Tipperary on December 30, 1983, brought an action against DOI in the District Court of the Western District of Texas (Civil Action No. MO–84–CA–5) under ESA § 210 alleging that DOI had violated the EPAA price regulations and had breached the contract. ESA § 210 authorized any person suffering a legal wrong because of any act arising out of the price control regulations to bring a district court action to recover up to treble damages, on the lapse of 90 days after a bonafide claim for a refund of the overcharge had been presented to the seller. Prior to the suit in Texas, Tipperary had demanded from DOI approximately $2.8 million in alleged overcharges. DeMenno/Kerdoon on February 19, 1986, sent a demand letter under ESA § 210 to DOI to recover for alleged overcharges under the onshore contract of $379,746.78 during the period June 1980 through January 1981. On March 17, 1986, DeMenno/Kerdoon sent a similar demand letter, citing OCSLA (43 U.S.C. § 1353(b)(1)), for overcharges under the offshore contract of $2,544,290.86 during the period July 1980 through January 1981. The demands in both letters were supplemented by a letter to DOI on April 2, 1986.

Plaintiffs' efforts to bring an action for statutory overcharges under ESA § 210 were thwarted by a decision of the Temporary Emergency Court of Appeals (TECA) in another case brought by counsel for Tipperary. *Lunday-Thagard Co. v. DOI*, 773 F.2d 322 (TECA 1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 972, 88 L.Ed.2d 770 (1986). TECA ruled in *Lunday-Thagard* that ESA § 210 did not contain a waiver of sovereign immunity, that the United States did not come within the definition of a "person", that the section did not provide the independent refiner with a cause of action for damages against the United States, and that breach of contract claims going to violations of the EPAA are cognizable only as statutory claims. The contracts in *Lunday-Thagard* covered both offshore and onshore royalty oil, and included deliveries both during the regulatory period that ended January 28, 1981, and after that date. The TECA found that the claim for damages rested on alleged violations of the EPAA and the regulations implementing it, except for a relatively small claim seeking reimbursement for transportation payments, which was seen as a Tucker Act claim independent of any claim created by the EPAA. TECA affirmed the dismissal of the breach of contract claims that alleged violations of DOE price regulations, and remanded for resolution the Tucker Act issue of damages for transportation payments.

As a result of the *Lunday-Thagard* decision, the District Court for the Northern District of Texas on October 9, 1985, dismissed Tipperary's breach of contract claims going to violations of the EPAA. After further briefing on the breach of contract claim for transportation payments, the District Court on April 14, 1986, on Tipperary's suggestion, found that the claims for transportation payments exceeded $10,000, that the court lacked subject matter jurisdiction, and dismissed without prejudice.

The complaints in these cases are drafted specifically to invoke the elements of this court's Tucker Act jurisdiction: claims founded upon (1) the Constitution, or (2) upon any statute or regulation, or (3) any express contract, or (4) liquidated or unliquidated damages in cases not sounding in tort. The complaints and motion papers make it clear that plaintiffs primarily are

concerned with breaches of the offshore and onshore contracts that allegedly occurred before January 28, 1981, during the period crude oil prices were regulated. The statutes and regulations involved in the alleged breach of those contracts during the regulation period are the ESA, the EPAA, and the DOE pricing regulations promulgated thereunder. The 5th Amendment takings, during the regulation period concern property, in the form of money or claims, that would come into existence on proof of violations of the pricing regulations. The claims for monies illegally exacted, during the period before January 28, 1981, similarly, are based on breach of the contract provisions that call for payments at the regulated price.

■ In summary, the core of each of the claims under the Tucker Act presented in plaintiffs' complaints that arise during the period of regulation is a violation of the pricing regulations. Absent the central issues of the alleged violations of ESA, EPAA and DOE implementing regulations, no claim would exist for breach of contract, violation of statute or regulation, illegal exaction, or 5th Amendment taking. Clearly the statutory claims dominate the Tucker Act issues. The claims in plaintiffs' complaints that are based on sales transactions that occurred before January 28, 1981, arise under the DOE pricing regulations.

■ Plaintiffs argue that the jurisdiction over contract claims conferred in the Tucker Act exists concurrently with the statutory remedies and judicial review procedures established in the ESA and the EPAA. Accordingly, plaintiffs would have this court proceed under the Tucker Act and determine whether DOI's actions prior to January 28, 1981, constituted a breach of the provision in Article V of the offshore contracts that the Government agrees to accept and the Purchaser agrees to pay for royalty oil "at the regulated price." Plaintiffs do not give effect to the system of judicial review Congress created in the ESA and made applicable in the EPAA. Nor do plaintiffs recognize the precedent,

binding on this court, of the Court of Claims as to these issues.

In its enactment of ESA § 211, with respect to the claims identified in that section, Congress withdrew the jurisdiction this court otherwise would have had under the Tucker Act. Court of Claims precedent requires this conclusion. The Court of Claims found that the text of ESA § 211(a) blanketed the court so that it could not scrutinize the merits of a civilian pay claim under the Back Pay Act (5 U.S.C. § 5596 (1982)) where the plaintiff challenged an order which rested on the ESA and the policies and guidelines of the Cost of Living Council and the Office of Emergency Preparedness. *Metsch v. United States*, 493 F.2d 1232, 204 Ct.Cl. 35 (1974). Similarly, the Court of Claims found that ESA § 211 was effective to oust it of jurisdiction to hear a claim for alleged illegal exaction of money by the Cost of Living Council as a penalty for increasing plaintiff's profit margin for custom services contrary to the ESA. *The Poole & Kent Co. v. United States*, 566 F.2d 1189, 214 Ct.Cl. 836 (1977).

These Court of Claims precedents are persuasive. No reason or logic justifies a different treatment for plaintiffs' breach of contract claims from the treatment that was accorded by the Court of Claims with respect to civilian pay claims and claims for illegal exactions that, but for ESA § 211, could have been heard under the Tucker Act jurisdiction.

■ Plaintiffs argue that the ESA § 211 procedure does not apply to their claims because the rules of statutory construction do not permit a subsequently enacted statute to amend or repeal a prior one, in the absence of an express declaration that Congress so intended. Amendment or repeal of Tucker Act remedies is not to be implied. Plaintiffs cite *Regional Rail Reorganization Act Cases v. United States*, 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974) and *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984). When the former statute cannot be reconciled with the later enacted statute, however, and the two are not capable of coex-

istence, the intent of Congress to withdraw jurisdiction previously granted must be recognized. *Regional Rail Reorganization Act Cases v. United States*, 419 U.S. at 134, 95 S.Ct. at 353; *Ruckelshaus v. Monsanto Co.*, 467 U.S. at 1018, 104 S.Ct. at 2875.

In ESA § 211(a), Congress explicitly stated that the district courts shall have "exclusive original jurisdiction" of cases arising under the ESA. That regulatory scheme has been incorporated in EPAA and DOE pricing regulations. Although the Tucker Act is not specifically restricted in ESA § 211(a) or mentioned in its legislative history, the grant of "exclusive" jurisdiction to one court necessarily means withdrawal of jurisdiction from all other courts, including this court. The two jurisdictions cannot exist together. The special judicial procedure created for review of the regulatory scheme included all of the remedies that otherwise would be available under the Tucker Act for claims arising under the Constitution, statutes, regulations, contracts, or illegal exactions. Accordingly, incorporation of ESA § 211 in the EPAA withdrew the jurisdiction of this court over plaintiffs' claims for breach of contract, violation of statutes and regulations, illegal exactions, and 5th Amendment takings that allegedly occurred during the regulation period and which arose from regulations duly promulgated by DOE.

In both the offshore and onshore contracts, the performance period included time after January 28, 1981, during which EPAA regulations were not applicable. During that later time, the Tucker Act jurisdiction of this court was not affected. The complaints in plaintiffs' cases for this period do not identify actions that allegedly would constitute a breach of contract. The briefing papers and argument, however, make it clear that plaintiffs' claims are concerned with prices charged during the period of regulation. Material relative to amounts of royalty oil purchased during the nonregulatory period is not presented, nor is pricing data. The amounts plaintiffs claim as damages in their complaints, and at argument, are computed on the basis of transactions that occurred during the period of price regulation.

Article XI of the offshore contracts and Article X of the onshore contract provide procedures to resolve disputes. At argument, plaintiffs acknowledged that no efforts had been made to utilize these procedures as to DOI actions applicable to prices for sales made during the period after January 28, 1981. The disputes procedures provided in Articles XI and X are not models of clarity, nor do they embody the procedures normally found in the standard disputes clause. DOI regulations, however, provide a right of appeal from a final order of the MMS Supervisor and an appeal to the Interior Board of Land Appeals (IBLA). 30 C.F.R. §§ 290.1—290.7 (1980).

Plaintiffs' complaints do not allege compliance with DOI's disputes procedures applicable to these contracts. In fact, plaintiffs did not attempt to pursue an administrative remedy for disputes that arose from sales transactions that occurred after price control regulations expired. Plaintiffs assert their complaints state claims for breach of contract, that the claims do not "arise under the contract", and, accordingly, that pursuit of an administrative remedy is not necessary. Further, plaintiffs argue that any attempt at an administrative remedy would be fruitless. It is clear that the sales transactions that occurred in the post regulation period would involve numerous factual issues that would require resolution by the IBLA before any breach of contract issue could be determined.

■ There is no excuse for plaintiffs' failure to pursue the administrative remedy that was available. Plaintiffs' failure to exhaust the administrative remedies available precludes judicial review at this time of plaintiffs' Tucker Act claims that are based on prices DOI found to be due in sales of royalty oil during the period after regulation. *Richardson Camera Co. v. United States*, 467 F.2d 491, 495–96, 199 Ct.Cl. 657 (1972).

Defendant's motions to dismiss for lack of jurisdiction over the subject matter are

ALLOWED as to plaintiffs' claims that arose from transactions that occurred during the period prior to January 28, 1981. Plaintiffs have failed to exhaust their administrative remedies as to claims that arise from sales transactions that occurred after January 28, 1981, during the terms of the contracts. Accordingly, the Clerk is directed to dismiss the complaint of Tipperary Refining Co., docket No. 283–86C, and the complaint of DeMenno/Kerdoon, docket No. 299–86C.