TRANSAMERICAN NATURAL GAS
CORP. (formerly GHR Energy
Corp.), Plaintiff-Appellant,

v.

UNITED STATES DEPT. OF INTERI-
OR, et al., Defendants-Appellees.

No. 5–118.

Temporary Emergency Court of Appeals.

March 25, 1987.

Edward C. Cerny, III and James L. Marketos, Lane & Mittendorf, New York City, were on brief, for plaintiff-appellant.

Richard K. Willard, Asst. Atty. Gen., and Stephen E. Hart, Thomas Millet and Leslie K. Dellon, U.S. Dept. of Justice, Washington, D.C., were on brief, for defendants-appellees.

Before GARZA, THORNBERRY, and SEAR, Judges.

GARZA, Judge.

This case concerns the scope of the government's sovereign immunity and the applicability of a previous panel decision, *Lunday-Thagard v. United States*, 773 F.2d 322 (TECA 1985), *cert. denied*, — U.S. ——, 106 S.Ct. 792, 88 L.Ed.2d 770 (1986) to the facts in the case at bar. For the reasons set out below, and especially the intervening decisions of the U.S. Claims Court, we agree with the district court's decision to dismiss the entire complaint for want of subject matter jurisdiction.

## BACKGROUND

The federal government established a pricing and allocation program for the domestic oil industry during the energy crisis of the early 1970's. The Department of the Interior created a "royalty oil program" under the Outer Continental Shelf Lands Act (OCSLA), which authorized the Secretary of the Interior to grant oil and gas leases on offshore lands. 43 U.S.C. § 1331, *et seq.* This offshore royalty oil could be sold "for not more than its regulated price, or if no regulated price applies, not less than its fair market value." 43 U.S.C. § 1353(b)(1). Section 210 of the Economic Stabilization Act of 1970 (ESA), as amended (12 U.S.C. § 1904 note (1982)), authorized suits for "damages or other relief" against all "persons" for violations of the offshore royalty oil program. Section 211 of the ESA vested exclusive jurisdiction over cases arising under the ESA, and, later, the Emergency Petroleum Allocation Act of 1973 (EPAA), 15 U.S.C. § 751 *et*

*seq.*, in the district courts. The Temporary Emergency Court of Appeals (TECA) was also created to have exclusive jurisdiction of all appeals arising under the ESA and EPAA. § 211(b)(2) (ESA); § 754(a)(1) (EPAA); *MGPC, Inc. v. Dept. of Energy*, 673 F.2d 1277, 1280–81 (TECA 1982).

Plaintiff TransAmerican Natural Gas Corp. (TransAmerican)[1] purchased crude oil from the United States which the government received as its royalty oil interest from offshore leases on the Outer Continental Shelf near Louisiana. TransAmerican had three contracts with the United States: 1) from February 1, 1973 to February 1, 1976 (No. 12445); 2) from September 16, 1973 to February 1, 1976 (No. 13781); and 3) from July 12, 1976 to July 1, 1980 (No. 15543). All three contracts began and ended before price controls were terminated pursuant to Executive Order on January 28, 1981.[2] More than three years after the price controls were lifted, on March 28, 1984, TransAmerican sued the United States in the U.S. District Court for the Eastern District of Louisiana for damages resulting from "overcharges" and transportation payments under the purchase contracts for offshore royalty oil. TransAmerican alleges that the contracts already included the price of transporting the offshore royalty oil to the point of delivery on land; TransAmerican claims it paid more than the maximum lawful price since TransAmerican paid for the transportation of the oil from the offshore drilling stations in addition to the contract price. The Complaint filed by TransAmerican specifies five different theories of recovery: Count I alleges contract damages and administrative fees due under ESA and EPAA; Count II alleges the unlawful imposition of transportation charges; Count III characterizes the government's alleged conduct as an "unlawful exaction" contrary to the governing statutes and regulations; Count V asserts a claim for restitution on the facts presented. Count IV alleges a constitutional claim

---

1. Prior to October 1, 1985, TransAmerican's business name was GHR Energy Corp.

2. Executive Order No. 12287, 46 Fed.Reg. 9909 (Jan. 28, 1981).

for the unlawful taking of property in violation of the Fifth Amendment.

The United States denies the substance of these allegations. Furthermore, the United States maintains that it has not waived its sovereign immunity in actions under the ESA and EPAA and, consequently, TransAmerican's suit should be dismissed for want of subject matter jurisdiction. A previous TECA case, *Lunday-Thagard Co. v. United States, supra,* held that ESA §§ 210 and 211 do not constitute a waiver of sovereign immunity for claims arising under the ESA and EPAA. The government urges *stare decisis* upon this panel. In the alternative, the United States argues that TransAmerican's claims are barred by the statute of limitations.[3]

The district court granted the government's motion to dismiss for lack of jurisdiction without entering formal findings or a memorandum opinion. TransAmerican appealed this decision both to TECA and to the Fifth Circuit. The Fifth Circuit has stayed consideration of TransAmerican's appeal[4] until a decision by this TECA panel is rendered.

## DISCUSSION

TransAmerican contends that *Lunday-Thagard* conflicts with the U.S. Supreme Court's decision in *United States v. Mitchell,* 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983), and, therefore, *Lunday-Thagard* should not be followed. In the alternative, if the previous TECA decision of *Lunday-Thagard* is found to be controlling, TransAmerican argues that its transportation payments claim and Fifth Amend-

ment takings claim should not have been dismissed. The government asserts that the failure to waive sovereign immunity is determinative of all issues raised.

A) In *Lunday-Thagard Co. v. United States* 773 F.2d 322 (TECA 1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 792, 88 L.Ed.2d 770 (1986), this Court held that ESA §§ 210 and 211 do not waive the government's sovereign immunity from suit. TransAmerican attempts to distinguish and discredit the reasoning of the *Lunday-Thagard* panel and challenges it as contrary to the controlling Supreme Court case on sovereign immunity, *United States v. Mitchell,* 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983).

In *Mitchell* the Supreme Court held that the jurisdiction conferred by the Tucker Act contained an express waiver of sovereign immunity. Though the Tucker Act did not by its own terms create a substantive remedy, once "the Constitution, an Act of Congress, or any regulation of an executive department" can be fairly interpreted as mandating compensation by the federal government for damages sustained, then the United States is amenable to suit. *Mitchell,* 463 U.S. at 216, 103 S.Ct. at 2967; 28 U.S.C. § 1491 (Tucker Act). TransAmerican hangs its hat on the language in *Mitchell* explaining that the determination of sovereign immunity is "analytically distinct" from the evaluation of whether a substantive statute creates a damages remedy. Since TransAmerican's "contract-based" claims are a *type* of claim for which the Tucker Act affords a remedy, Trans-

---

**3.** While we note that TransAmerican did not file suit until eleven years after it first began purchasing royalty oil and more than three years after the removal of price controls, we do not reach this issue because of our conclusion that no subject matter jurisdiction exists. However, our decision in *Johnson Oil Co. v. DOE and Southwestern Refining Co.,* 690 F.2d 191 (TECA 1982) foreclosed application of Louisiana's ten year limitations period to cases involving the national policy of ending regulation of the oil industry. Any other limitations period would seem to foreclose relief here. *See Lunday-Thagard v. United States,* 620 F.Supp. 3 (W.D.La. 1984) (district court found one year statute of limitations applies); 28 U.S.C. 2401(a) (general

six year statute of limitations period when no other limitations period applicable) *but see Gulf Oil Corp. v. Dyke,* 734 F.2d 797, 809 (TECA), *cert. denied,* 469 U.S. 852, 105 S.Ct. 173, 83 L.Ed.2d 108 (1984) (cause of action accrues from *first* overcharge); *CPI Crude, Inc. v. Coffman,* 776 F.2d 1546, 1551–53 (TECA 1985) (same).

**4.** Case No. 85–3816 (U.S. Dept. of Interior's Motion to Stay Proceedings granted on Feb. 13, 1986; TransAmerican's Motion for Reconsideration or, in the alternative, certification of question to Supreme Court denied on March 18, 1986).

American concludes that sovereign immunity does not bar this suit.

■ However, the analysis employed in *Lunday-Thagard* and other courts concerning the ESA and EPAA is to the contrary. While the Tucker Act does embody a waiver of sovereign immunity for claims against the United States committed to the Claims Court, Congress specifically placed jurisdiction of *all* EPAA and ESA claims in the *district courts.* ESA § 211. The U.S. Claims Court has held that in view of § 211, it has no jurisdiction to review actions brought under § 210. *The Poole & Kent Co. v. United States,* 566 F.2d 1189, 214 Ct.Cl. 836 (1977); *Tipperary Refining Co. v. United States,* 11 Cl.Ct. 572 (1987). TECA also previously rejected a claim that § 211 is a specific enactment which creates an exception to the jurisdiction of the Tucker Act. *McCulloch Gas Processing Corp. v. Canadian Hidrogas Resources, Ltd.,* 577 F.2d 712, 715–16 (TECA) *cert. denied,* 439 U.S. 831, 99 S.Ct. 109, 58 L.Ed.2d 126 (1978). The Tucker Act does not supply a waiver of sovereign immunity for the ESA or actions under the EPAA. Therefore, the government's sovereign immunity remains inviolate; the United States is immune from suit for money damages allegedly caused by violations of the ESA and EPAA.

B) TransAmerican argues that if *Lunday-Thagard* is found to be controlling, then the takings claim and transportation payments claim should not have been dismissed. The *Lunday-Thagard* panel found that the transportation payments claim presented in the pleadings was a "non-EPAA" claim and, thus, not barred by sovereign immunity. 773 F.2d at 325. Another TECA case, *Griffin v. United States,* 537 F.2d 1130 (TECA), *cert. denied,* 429 U.S. 919, 97 S.Ct. 313, 50 L.Ed.2d 286 (1976) held that ESA § 210 could provide a cause of action for an unconstitutional taking, though the *Griffin* panel found no claim actually presented. *See also McCul-*

*loch Gas, supra,* 577 F.2d at 716–17. TransAmerican asks us to reinstate the takings and transportation payment claims and transfer them to the U.S. Claims Court for further consideration.

■ The fact that the *Lunday-Thagard* panel characterized Lunday-Thagard's pleading as presenting a potential "non-EPAA" issue does not foreclose our review of TransAmerican's complaint. The *Lunday-Thagard* Court held only that the complaint *as drafted* could be construed as presenting a non-EPAA contract claim and the claim was remanded to the district court for consideration.[5] In a recent consolidated decision concerning claims on a royalty oil contract similar to TransAmerican's, *Tipperary Refining Co. v. United States* (Case No. 283–86C) and *DeMenno/Kerdoon v. United States* (Case No. 299–86C) 11 Cl.Ct. 572 (1987), the U.S. Claims Court held that Fifth Amendment takings claims and other claims "related to" the ESA, EPAA and U.S. Dept. of Energy (DOE) pricing regulations arise only because of statutory claims precluded by sovereign immunity:

> "In summary, the core of each of the claims under the Tucker Act presented in plaintiffs' complaints that arise during the period of regulation is a violation of the pricing regulations. Absent the central issues of the alleged violations of ESA, EPAA and DOE implementing regulations, no claim would exist for breach of contract, violation of statute or regulation, illegal exaction, or 5th Amendment taking.
>
> \*   \*   \*   \*   \*   \*
>
> Accordingly, incorporation of ESA § 211 in the EPAA withdrew the jurisdiction of this [Claims] Court over plaintiffs' claims …"

*Tipperary* and *DeMenno/Kerdoon,* at 576, 577. The Claims Court found it simply lacked jurisdiction to hear claims largely

---

5. The district court properly dismissed Lunday-Thagard's complaint without prejudice since the amount in controversy exceeded $10,000. Lunday-Thagard then proceeded to file in the U.S. Claims Court. (Cl.Ct. Case No. 408–86C). The government has renewed its argument that this claim is indivisible from the claims for violations of the ESA and EPAA and petitioned the Claims Court to dismiss the case.

dependent upon interpretation of ESA or EPAA violations: it will not hear cases concerning Fifth Amendment takings claims or. transportation payment claims which have as a factual genesis contracts entered into under the ESA and EPAA. The Claims Court has adopted the position advanced by the United States in this case—that both the takings and transportation payment claims arise from the offshore royalty oil purchase contracts. In essence, the position is that TransAmerican's claim would not exist but for the EPAA and ESA and therefore should be dismissed.

■ This Court and other Courts of Appeals have also consistently recognized that when purported contract claims are inseparable from alleged violations of the ESA, EPAA or the price regulations promulgated thereunder, those claims arise under § 210 of the ESA. *See, e.g., Johnson Oil Co. v. DOE and Southwestern Refining Co.*, 690 F.2d 191, 196 (TECA 1982) ("dominant claim" alleged a "violation of the pricing regulations"); *Francis Oil & Gas, Inc. v. Exxon Corp.*, 687 F.2d 484, 487 (TECA), *cert. denied*, 459 U.S. 1010, 103 S.Ct. 365, 74 L.Ed.2d 400 (1982); *Mountain Fuel Supply Co. v. Johnson*, 586 F.2d 1375, 1384 (10th Cir.1978), *cert. denied*, 441 U.S.

952, 99 S.Ct. 2182, 60 L.Ed.2d 1058 (1979). *Citronelle-Mobile Gathering, Inc. v. Gulf Oil Corp.*, 591 F.2d 711, 715–16 (TECA) (per curiam), *cert. denied*, 444 U.S. 879, 100 S.Ct. 168, 62 L.Ed.2d 109 (1979).

■ Although TransAmerican requests that the claims cognizable under *Lunday-Thagard* be transferred by this Court to the Claims Court, if the case is transferred the Claims Court will dismiss the case because the gravamen of the complaint will be interpreted as statutory-derived claims under the ESA and EPAA similar to *Tipperary* and *DeMenno/Kerdoon* [6] and, consequently, the Claims Court will not have jurisdiction to hear TransAmerican's complaint. While ESA § 210 does not bar a cause of action for an unconstitutional taking, TransAmerican's supposed "takings" claim presents solely a statutory claim for overcharges.[7] Similarly, TransAmerican's own explanation for its transportation payments claim conclusively demonstrates that it is grounded in the ESA and EPAA.[8] Rather than waste precious judicial time and resources in returning this case to the district court for a subsequent transfer to the Claims Court for further proceedings, it is the duty of this Court to resolve any possible conflicts over the ultimate existence of subject matter jurisdiction. We

---

6. The plaintiffs in *Tipperary* and *DeMenno/Kerdoon* raised a Fifth Amendment claim and transportation payments claim almost identical to TransAmerican's claims here.

7. TransAmerican's "takings" claim consists solely of the $2,164,294.68 damages allegedly sustained due to the breach of the royalty oil purchase contract. Of course, when the government takes physical possession of money or property which is not lawfully owed to the government, a taking can occur. *See, e.g., Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980) (taking of interest on interpleader fund not justified as payment of obligation to government). However, when the determination of an amount "lawfully owed" the government requires interpretation of a contract entered into under authority of the ESA and EPAA, *any* breach of contract action could conceivably be characterized as an unconstitutional taking merely through creative pleadings. Such a rule would effectively eliminate the government's traditional immunity from suit. We decline to recognize a claim based *solely* on alleged con-

tractual overcharges under the ESA, EPAA, and DOE pricing regulations as a constitutional takings claim which overcomes the sovereign immunity of the United States.

8. According to TransAmerican, the price regulations (10 C.F.R. § 210.62(a) and (c)) required the Dept. of Interior (DOI) to charge TransAmerican a price for the royalty oil which included onshore delivery. Thus, TransAmerican was allegedly overcharged when it also had to pay the operators of the offshore oil wells to deliver the royalty oil from the offshore platform. TransAmerican maintains it is "entitled to a judgment ... ordering DOI to refund to [TransAmerican] the entire amount of such unlawful overcharges plus interest in accordance with section 210 of the ESA as incorporated by section 5 of the EPAA." Complaint, ¶¶ 25, 28. The exclusive remedy for such a violation, though, is set forth in ESA § 210. When an alleged contractual claim goes to a violation of the EPAA, that claim is cognizable only as a statutory claim. *Lunday-Thagard*, 773 F.2d at 326; *Johnson Oil Co. v. DOE and Southwestern Refining Co.*, 690 F.2d 191 (TECA 1982).

hold that all of TransAmerican's claims must be dismissed because they do not exist separate from the federal statutes which contain no waiver of the United States' sovereign immunity from suit.

### CONCLUSION

The case is controlled by the government's failure to waive sovereign immunity. Though represented well by the efforts of able counsel, TransAmerican's claim that sovereign immunity has been waived is contrary to our *Lunday-Thagard* decision. Moreover, the Fifth Amendment takings and transportation payment claims are not "non-EPAA" issues here. Though they are disguised in appropriate rhetoric, they are not divisible from their origin in ESA and EPAA statutory-based contracts and, therefore, are also barred due to sovereign immunity.

Appeal DISMISSED.